FRED W. AYER *vs.* WESTERN UNION TELEGRAPH COMPANY.

Penobscot. Opinion August 24, 1887.

*Telegraph companies. Negligence. Void stipulation limiting liability.*

The dropping of an important word in the transmission of a message by telegraph is *prima facie* evidence of negligence on the part of the telegraph company, unless explained or accounted for.

The usual stipulation upon telegraph blanks that the company shall not be liable for the negligence of itself or any of its servants, in case of a mistake or omission in transmitting the message, unless the message is repeated at the expense of the sender, is void, being against public policy.

As between the sender and receiver of a message by telegraph, any loss occasioned by a change of the terms of the message during transmission, must fall upon the party who elected that means of communication for that message.

Such party has his remedy over against the telegraph company, in case the error resulted from its negligence.

ON report.

An action to recover damages sustained by the plaintiff by the negligence of the defendant in transmitting his telegraphic message to A. W. Von Utassy, Philadelphia.

The opinion states the facts.

*Wilson and Woodard*, for the plaintiff cited: *Bartlett* v. *Western Union Tel. Co.* 62 Maine, 209; *True* v. *International Tel. Co.* 60 Maine, 9; Gray, Communication by Telegraph, § 105; *May* v. *Weston Union Tel. Co.* 112 Mass. 90; *Boston and Albany R. R. Co.* v. *Richardson*, 135 Mass. 472.

*Baker, Baker and Cornish*, for the defendant, contended that there was no contract between the plaintiff and the person to whom the message was sent. Assuming that the telegraph company was the agent of the plaintiff, it is well settled that the principal is not responsible when the agent acts beyond the scope of his authority; it matters not whether the agency be general or special. *Rossiter* v. *Rossiter*, 8 Wend. 496; *Johnson* v. *Wingate*, 29 Maine, 404; *Hazeltine* v. *Miller*, 44 Maine, 177.

The limitation of the power of a special agent is universally

recognized.   *Blaine* v. *Proudfit*, 3 Call. 207 : *Munn.* v. *Com. Co.* 15 Johns. 44; *Beals* v. *Allen*, 18 Johns. 363 ; *Thompson* v. *Stewart*, 3 Conn. 171 ; *Moore* v. *Lockett*, 2 Bibb. 67 ; *Martin's Admr.* v. *The United States*, 2 T. B. Mon. 89 ; *Banorgee* v. *Hovey*, 5 Mass. 11 ; *Starbird* v. *Curtis*, 43 Maine, 352 ; *School Dist.* v. *Ætna Ins. Co.* 62 Maine, 330.

Now, if a telegraph company can be deemed the agent of the sender in any sense, its power is closely restricted, and the authority conferred upon it is extremely limited.   That authority is simply to deliver a particular message in exact and unvarying terms.

Applying the principles of law to the facts of this case, it is evident that the plaintiff was not bound to deliver the laths at two dollars per thousand.

The question arose in England in 1870, in the case of *Henkel* v. *Pape*, Law Rep. 6 Ex. 7 ; S. C. Allen's Tel. Cases. p. 567.

The same question arose in Scotland in 1871, in *Verdin* v. *Robertson*, 10 Court of Sess. Cas. 35 ; S. C. Allen's Telegraph Cases, p. 697.

"If the person sought to be charged under the rule, as employer did not contract with the party committing the wrongful act for his labor or services, and is not directly liable to him for compensation for such labor or services, and has no such control over him as will enable the employer to direct the manner of performing the labor or services, he is not liable for the wrongful act of the agent or servant."   *Calahan* v. *B. & M. R. R. Co.* 23 Iowa, 562, and see *McCarthy* v. *Second Parish of Portland*, 71 Maine, 318 ; *Mayhew* v. *Sullivan Mining Co.* 76 Maine, 100.

And the same principle flows through all the authorities. *Fletcher* v. *Braddich*, 5 Bos. & Pul. 182 ; *Sproul* v. *Hemmingway*, 14 Pick. 1 ; *Clark* v. *Vt. & Can. R. R. Co.* 28 Vt. 103 ; *Pawlet* v. *Rutland & Wash. R. R. Co.* 28 Vt. 297 ; *Eaton* v. *E. & N. A. Ry. Co.* 59 Maine, 520 ; Wood, Master & Serv. §§ 279, 311, 314.

"Unless the relation of master and servant exists, the party contracting is not responsible for the negligent or tortious acts

of the person with whom the contract is made, especially if those acts are outside of the contract." *Eaton* v. *E & N. A. Ry. Co.* 59 Maine, 520.

The condition, printed at the top of the blank upon which the plaintiff wrote the message, limiting the liability of the defendant where the message was not repeated, was valid and binding.

In 1866 the question came before the Supreme Court of Massachusetts in the leading case of *Ellis* v. *Amer. Tel. Co.* 13 Allen, 226.

Mr. Chief Justice BIGELOW held the condition valid in a most elaborate opinion, making its reasonableness the test of its validity.

This decision has been followed in Massachusetts in *Redpath* v. *Wes. Un. Tel. Co.* 112 Mass. 71; *Grinnell* v. *Same*, 113 Mass. 299; *Clement* v. *Same*, 137 Mass. 463.

The error in the case at bar was such as would have been remedied by repetition. The counsel for the plaintiff says the defendant was bound to show this, and that there is no evidence upon the point. It is evident from the very nature of the case that such a fact cannot be proved by positive testimony. Nor is it required. It is enough if (to use the language of the court in *True* v. *International Tel. Co.* 60 Maine, at 18,) the error, causing the injury, "would have been manifestly prevented or avoided by repeating."

Without quoting further we will simply cite a few of the authorities supporting the validity of this condition as to repetition. *Camp.* v. *Wes. Un. Tel. Co.* 1 Met. (Ky.) 164; *De Rutte* v. *N. Y. Tel. Co.* 1 Daly, 547; *Breese* v. *Tel. Co.* 48 N. Y. 132; *Wes. Un. Tel. Co.* v. *Carew*, 15 Mich. 525; *Wann.* v. *Tel. Co.* 37 Mo. 432; *Passmore* v. *Tel. Co.* 78 Pa. St. 238; *Becker* v. *Tel. Co.* 11 Neb. 87; *Kinghorne* v. *Same*, 18 U. C. Rep. 60; *MacAndrew* v. *Same*, 17 C. B. 3; *Lassiter* v. *Same*, 89 N. C. 334; *Tel. Co.* v. *Neill*, 57 Tex. 283; *Womac* v. *Tel. Co.* 58 Tex. 176; *Tel. Co.* v. *Gildersleeve*, 29 Md. 232.

EMERY, J. On report. The defendant telegraph company was engaged in the business of transmitting messages by

telegraph between Bangor and Philadelphia, and other points. The plaintiff, a lumber dealer in Bangor, delivered to the defendant company in Bangor, to be transmitted to his correspondent in Philadelphia, the following message: "Will sell 800M. laths, delivered at your wharf, two ten net cash. July shipment. Answer quick." The regular tariff rate was prepaid by the plaintiff for such transmission. The message delivered by the defendant company, to the Philadelphia correspondent was as follows: "Will sell 800M laths delivered at your wharf two net cash. July shipment. Answer quick." It will be seen that the important word "ten," in the statement of price was omitted.

The Philadelphia party immediately returned by telegraph, the following answer: "Accept your telegraphic offer on laths. Cannot increase price spruce." Letters afterward passed between the parties which disclosed the error in the transmission of the plaintiff's message. About two weeks after the discovery of the error, the plaintiff shipped the laths, as per the message received by his correspondent to wit, at $2.00 per M. He testified that his correspondent insisted he was entitled to the laths at that price, and they were shipped accordingly.

The defendant telegraph company offered no evidence whatever, and did not undertake to account for, or explain the mistake in the transmission of the message. The presumption therefore is, that the mistake resulted from the fault of the telegraph company. We cannot consider the possibility that it may have resulted from causes beyond the control of the company. In the absence of evidence on that point we must assume that for such an error the company was in fault. *Bartlett* v. *Tel. Co.* 62 Maine, 221.

The fault and consequent liability of the defendant company being thus established, the only remaining question is the extent of that liability in this case. The plaintiff claims, it extends to the difference between the market price of the laths, and the price at which they were shipped. The defendant claims its liability is limited to the amount paid for the transmission of the message. It claims this limitation on two grounds.

I. The company relies upon a stipulation made by it with the plaintiff, as follows : "All messages taken by this company are subject to the following terms : To guard against mistakes or delays, the sender of a message should order it *repeated*; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message, and this company, that said company shall not be liable for mistakes or delays in the transmission, or delivery, or for non-delivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same." This is the usual stipulation printed on telegraph blanks, and was known to the plaintiff, and was printed at the top of the paper upon which he wrote and signed his message. He did not ask to have the message repeated.

Is such a stipulation, in the contract of transmission, valid, as a matter of contract assented to by the parties, or is it void as against public policy? We think it is void.

Telegraph companies are *quasi* public servants. They receive from the public valuable franchises. They owe the public, care and diligence. Their business intimately concerns the public. Many and various interests are practically dependent upon it. Nearly all interests may be affected by it. Their negligence in it may often work irreparable mischief to individuals and communities. It is essential for the public good, that their duty of using care and diligence be rigidly enforced. They should no more be allowed to effectually stipulate for exemption from this duty, than should a carrier of passengers, or any other party engaged in a public business.

This rule does not make telegraph companies insurers. It does not make them answer for errors not resulting from their negligence. It only requires the performance of their plain duty. It is no hardship upon them. They engage in the business voluntarily. They have the entire control of their servants and instruments. They invite the public to entrust messages to them for transmission. They may insist on their compensation

in advance. Why then, should they refuse to perform the common duty of care and diligence? Why should they make conditions for such performance? Having taken the message and the pay, why should they not do all things (including the repeating) necessary for correct transmission? Why should they insist on special compensation for using any particular mode or instrumentality, as a guard against their own negligence? It seems clear to us, that having undertaken the business, they ought without qualification, to do it carefully, or be responsible for their want of care.

It is true there are numerous cases in other states holding otherwise, but we think the doctrine above stated, is the true one, and in harmony with the previous decisions of this court. *True* v. *Tel. Co.* 60 Maine, 1; *Bartlett* v. *Tel. Co.* 62 Maine, 221.

II. The defendant company also claims that the plaintiff was not in fact damaged to a greater extent than the price paid by him for the transmission. It contends that the plaintiff was not bound by the erroneous message delivered by the company to the Philadelphia party, and hence need not have shipped the laths at the lesser price. This raises the question, whether the message written by the sender and entrusted to the telegraph company for transmission, or the message written out and delivered by the company to the receiver at the other end of the line, as and for the message intended to be sent, is the better evidence of the rights of the receiver against the sender.

The question is important and not easy of solution. It would be hard, that the negligence of the telegraph company, or an error in transmission resulting from uncontrollable causes, should impose upon the innocent sender of a message, a liability he never authorized, nor contemplated. It would be equally hard that the innocent receiver, acting in good faith upon the message as received by him, should, through such error lose all claim upon the sender. If one, owning merchandise, write a message offering to sell at a certain price, it would seem unjust that the telegraph company could bind him to sell at a less price, by making that error in the transmission. On the other hand, the

receiver of the offer, may in good faith, upon the strength of the telegram as received by him, have sold all the merchandise to arrive, perhaps at the same rate. It would seem unjust that he should have no claim for the merchandise. If an agent receive instructions by telegraph from his principal, and in good faith act upon them as expressed in the message delivered him by the company, it would seem he ought to be held justified, though there were an error in the transmission.

It is evident that in case of an error in the transmission of a telegram, either the sender or receiver must often suffer loss. As between the two, upon whom should the loss finally fall? We think the safer and more equitable rule, and the rule the public can most easily adapt itself to, is, that, as between sender and receiver, the party, who selects the telegraph as the means of communication, shall bear the loss caused by the errors of the telegraph. The first proposer can select one of many modes of communication, both for the proposal and the answer. The receiver has no such choice, except as to his answer. If he cannot safely act upon the message, he receives through the agency selected by the proposer, business must be seriously hampered and delayed. The use of the telegraph has become so general, and so many transactions are based on the words of the telegram received, any other rule would now be impracticable.

Of course the rule above stated, presupposes the innocence of the receiver, and that there is nothing to cause him to suspect an error. If there be anything in the message, or in the attendant circumstances, or in the prior dealings of the parties, or in anything else, indicating a probable error in the transmission, good faith on the part of the receiver, may require him to investigate before acting. Neither does the rule include forged messages, for in such case, the supposed sender did not make any use of the telegraph.

The authorities are few and somewhat conflicting, but there are several in harmony with our conclusion upon this point. In *Durkee* v. *Vt. C. R. R. Co.* 29 Vt. 137, it was held that where the sender himself elected to communicate by telegraph

the message received by the other party is the original evidence of any contract. In *Saveland* v. *Green*, 40 Wis. 431, the message received from the telegraph company was admitted as the original and best evidence of a contract, binding on the sender. In *Morgan* v. *People*, 59 Ill. 58, it was said that the telegram received was the original and it was held that the sheriff receiving such a telegram from the judgment creditor, was bound to follow it, as it read. There are dicta to the same effect, in *Wilson* v. *M. & N. Ry. Co.* 31 Minn. 481, and *Howley* v. *Whipple*, 48 N. H. 488.

*Tel. Co.* v. *Schotter*, 71 Ga. 760, is almost a parallel case. The sender wrote his message, "Can deliver hundred turpentine at sixty-four." As received from the telegraph company it read, "can deliver hundred turpentine at sixty," the word "four" being omitted. The receiver immediately telegraphed an acceptance. The sender shipped the turpentine, and drew for the price at sixty-four. The receiver refused to pay more than sixty. The sender accepted the sixty, and sued the telegraph company for the difference between sixty and the market. It was urged, as here, that the sender was not bound to accept the sixty as that was not his offer. The court held, however, that there was a completed contract at sixty—that the sender must fulfill it, and could recover his consequent loss of the telegraph company.

It follows, that the plaintiff in this case is entitled to recover the difference between the two dollars and the market, as to laths. The evidence shows that the difference was ten cents per M.

> *Judgment for plaintiff for eighty dollars with interest from the date of the writ.*

PETERS, C. J., WALTON, DANFORTH, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.