## Wytheville.

### BOYCE V. WESTERN UNION TELEGRAPH COMPANY.

June 8, 1916.

Absent, Cardwell, J.

1. TELEGRAPH AND TELEPHONE COMPANIES—*Interstate Messages—Unrepeated—Limit on Recovery.*—Congress having permitted telegraph companies to classify their interstate messages into repeated and unpeated messages, and to charge different rates therefor, a regulation of such companies of which a sender of a telegram has notice, limiting the liability of the company on unrepeated interstate messages to the cost of the message is reasonable and will be enforced.

2. TELEGRAPH AND TELEPHONE COMPANIES—*Interstate Commerce—Publication of Contract Forms.*—The act of Congress bringing telegraph companies under the regulation of the Interstate Commerce Commission does not require them to file their contract forms or tariffs with the commission.

3. TELEGRAPH AND TELEPHONE COMPANIES—*Limitation of Liability—Notice Endorsed on Blanks—Failure to Read—Estoppel.*—A party long familiar with the use of telegrams and who keeps the blanks in his office, cannot defeat the telegraph company of the protection afforded by a stipulation printed on the back of the blank on which his message was written, by declaring his ignorance of such stipulation. To permit him to do so would be to allow him to take advantage of his own wrong. If he failed to read it, especially when his attention was called to it by a notice printed in large black type on the face of the blanks, it was his own fault.

Error to a judgment of the Court of Law and Chancery of the city of Portsmouth, in an action of trespass on the case. Nominal judgment for the plaintiff. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*James G. Martin,* for the plaintiff in error.

*Hughes, Little & Seawell,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by W. P. Boyce, a horse dealer in Norfolk, Va., to recover from the defendant telegraph company damages alleged to have. been sustained by its negligence in the transmission of a message.

The message was sent April 10, 1914, from Norfolk, addressed to Bear Brothers, Belleville, Illinois, ordering a shipment of mules. It was sent as an unrepeated night letter, in order to secure a cheaper rate. During the numerous relays between the points of origin and destination the word "and" was transmitted "no," making the telegram read "ship me fifteen mules all mares no extra good," instead of "ship me fifteen mules all mares and extra good." The blank on which the message was written, at the plaintiff's office, was, when delivered, pasted on a night letter blank in the presence of the plaintiff's agent, in pursuance of his instruction to send it as a night letter. Both the blank on which the message was first written and that to which it was attached by the telegraph company, contained a stipulation to the following effect:

"ALL TELEGRAMS TAKEN BY THIS COM-PANY ARE SUBJECT TO THE FOLLOWING TERMS:

"To guard against mistakes or delays, the sender of a telegram should order it REPEATED, that is, tele-graphed back to the originating office for comparison. For this. one-half the unrepeated telegram rate is charged in addition. Unless otherwise indicated on

its face, THIS IS AN UNREPEATED TELEGRAM AND PAID FOR AS SUCH in consideration whereof it is agreed between the sender of the telegram and this company:

"1.  The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNREPEATED telegrams, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any REPEATED telegrams, beyond fifty times the sum received for sending the same, *unless especially valued;* nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure telegrams."

This being an interstate message, the court below sustained  the validity of this stipulation and entered judgment in favor of the plaintiff for fifty cents, the sum paid by him for transmitting the message.

The contention of the defendant company is that the stipulation in question, in an unrepeated interstate message, that any recovery shall be limited to the cost of the message, is reasonable and valid and should be enforced; that it is reasonable, especially in view of the business transacted by the company, which does not deal in a tangible piece of property such as a carrier does in handling freight capable of an intrinsic value of its own; that owing to the peculiar nature of the employment and the extraordinary risks attending it, it is only equitable that the company should avail itself of the precaution of a repeated message in order to avoid mistakes, and at the same time, in case of an important message, protecting the sender against such mistakes by the payment of a small increased rate; and that the importance of a

Boyce *v.* West. U. Tel. Co., 119 Va. 14.    17

Opinion.

message can only be estimated by the sender, as it has no value of its own, and if it is not sufficiently important to be repeated, there is no standard whereby the company can place a valuation upon it except by the amount paid for its handling.

The leading case on this subject is. *Primrose* v. *Western U. Tel. Co.*, 154 U. S. 1, 14 Sup Ct. 1098, 38 L. Ed. 883, decided in 1893. In that case the same stipulation was involved that we are dealing with in the present case. It is there said: "By the regulation now in question, the telegraph company has not undertaken to wholly exempt itself from liability for negligence; but only to require the sender of the message to have it repeated, and to pay half as much again as the usual price, in order to hold the company liable for mistakes or delays in transmitting or delivering, or for not delivering a message, whether happening by negligence of its servants, or otherwise.

"In *Western Union Tel. Co.* v. *Hall*, 124 U. S. 444, 453, (8 Sup. Ct. 577, 31 L. Ed. 479), the effect of such a regulation was presented by the certificate of the circuit court, but was not passed upon by this court, because it was of opinion that upon the facts of the case the damages claimed were too uncertain and remote. But the reasonableness and validity of such regulations have been upheld in *McAndrew* v. *Electric Tel. Co.*, 11 C. B. 3, and in *Baxter* v. *Dominion Tel. Co.*, 37 Upper Canada Q. B. 470, as well as by the great preponderance of authority in this country. Only a few of the principal cases need be cited.

"In the earliest American case, decided by the Court of Appeals of Kentucky, the reasons for upholding the validity of a regulation very like that now in question were thus stated: 'The public are admonished by the notice that in order to guard against mistakes in the

2.

transmission of messages every message of importance ought to be repeated.   A person desiring to send a message is thus apprised that there may be a mistake in its transmission, to guard against which it is necessary that it should be repeated.   He is also notified that if a mistake occurs the company will not be responsible for it unless the message be repeated.   There is nothing unreasonable in this condition.   It gives the party sending the message the option to send it in such a manner as to hold the company responsible, or to send it for a less price at his own risk,   If the message be unimportant, he may be willing to risk it without paying the additional charge.   But if it be important and he wishes to have it sent correctly, he ought to be willing to pay the cost of repeating the message. This regulation, considering the accidents to which the business is liable, is obviously just and reasonable. It does not exempt the company from responsibility, but only fixes the price of that responsibility, and allows the person who sends the message either to transmit it at his own risk at the usual price, or by paying in addition thereto half the usual price to have it repeated, thus rendering the company liable for any mistake that may occur.'   .   .   .   .   (*Camp* v. *Western Union Tel. Co.*, 1 Metc (Ky.) 164, 168, 710 Am. Dec. 461.)

"If the change of words in the message was owing to mistake or inattention of any of the defendant's servants, it would seem that it must have consisted either in a want of plainness of the handwriting of Tindall, the operator who took it down at Brookville, or in a mistake of his fellow operator, Stevens, in reading that writing, or in transmitting it to Ellis; or also in a mistake of the operator at Ellis in taking down the message at that place.   If the message had been re-

peated, the mistake, from whatever cause it arose, must have been detected by means of the differing versions made and kept at the offices at Ellis and Brookville.  .  .  .

"The conclusion is irresistible that, if there was negligence on the part of the defendant's servants, a jury would not have been warranted in finding that it was more than ordinary negligence; and that, upon principal and authority, the mistake was one for which the plaintiff, not having had the message repeated according to the terms printed upon the back thereof and forming part of his contract with the company, could not recover more than the sum which he had paid for sending the single message.  Any other conclusion would restrict the right of telegraph companies to regulate the amount of their liability within narrower limits than were allowed to common carriers in *Hart* v. *Pennsylvania Railroad.*"     112 U. S. 331, 5 Sup. Ct. 151, 2 L. Ed. 717.

The conclusion of the Supreme Court in the foregoing case that a stipulation such as that in the case at bar, providing that the company shall not be liable for mistakes in transmission or delivery beyond the sum received for sending it unless the sender orders it to be repeated, is reasonable and valid, and that the recovery cannot exceed the amount agreed upon in that stipulation, has been followed in numerous cases which need not be cited.

The contention, however, on behalf of the plaintiff is that, inasmuch as the Supreme Court in the *Primrose case, supra,* held that telegraph companies were not common carriers, and the act of Congress of June 18, 1910, to regulate commerce, since passed, declares such companies to be common carriers, as such they cannot contract against their own negligence, and,

therefore, the *Primrose case, supra,* and those follow-
ing it are no longer applicable or of any force as author-
ity. In our opinion the interstate commerce act
relied on is not subject to the interpretation called for
by the plaintiff's contention. On the contrary, Con-
gress, by the act of June 16, 1910, seems to recognize
the necessity and validity of such stipulations, and to
authorize the making of such contracts with respect
to repeated and unrepeated messages.

The clause of the act applicable is as follows: "All
charges made for any service rendered or to be rendered
in the transportation of passengers or property and
for the transmission of messages by telegraph, tele-
phone or cable, as aforesaid, or in connection therewith,
shall be just and reasonable; and every unjust and
unreasonable charge for such service or any part
thereof is prohibited and declared to be unlawful;
provided that messages by telegraph, telephone or
cable, subject to the provisions of this act, *may be
classified into day, night, repeated, unrepeated,* letter,
commercial, press, government, and such other classes as
are just and reasonable, and different rates may be
charged for the different classes of messages."

So that telegraph companies have here the direct
authority and sanction of Congress to classify their
messages into repeated and unrepeated messages, and
to charge different rates for each; in other words, to
enter into the very contract which was made in this
case.

The most recent case passing upon this stipulation,
in the light of the congressional legislation, is that of
*Haskell, &c., Co.* v. *Postal Telegraph Co.,* 114 Me. 277,
96 Atl. 219, decided by the Supreme Court of Maine.
After quoting the portions of the act applying to tele-
graph companies and discussing the *Ayer case,* 79 Me.

Boyce *v.* West. U. Tel. Co., 119 Va. 14.      21

Opinion.

493, 10 Atl. 495, 1 Am. St. Rep. 353, cited by that plaintiff, the court says: "Many changes have occurred in business and business regulation in the twenty-eight years since the decision in the *Ayer case* and the creation of the Interstate Commerce Commission. The decision stands, but the commerce act has expanded until it comprehends and includes the questions involved in the case at bar, and, so including, it must perforce, being the supreme law, suspend the operation of any State statute or regulation, or the force and effect of any decision in opposition thereto, the *Ayer case* among the rest, so far as they conflict with the act of June 18, 1910. This rule does no violation to any State, corporation or individual, and is in keeping with the sentiment and reasons underlying sound public policy, the highest good, the best interest of all the people, not that of one State or one locality. . . . By the act of June 18, 1910, telegraph companies have been made common carriers within the meaning and subject to the provisions of the interstate commerce act. Being so subject, as to all questions of classification, regulation and procedure, and especially where, as in this case, the reasonableness of the rules and charges, and the limitation of liability are in question, State courts are without jurisdiction, and such cases must be brought in the Federal court, or be submitted for the determination of the Interstate Commerce Commission, as in the case of other common carriers coming within the administrative competency of that Commission. . . .

"It is the opinion of the court that the defendant was not liable for any greater sum than the amount named for sending the message."

In the case of *H. B. Williams, Inc.,* v. *Western Union Tel. Co.,* 203 Fed. 140, which arose after the

passage of the act in question, in the transmission of the telegram the word "fifth" was changed to "first," and the same stipulation as to an unrepeated message was at issue. The court, after quoting copiously from the opinion of the Supreme Court in the *Primrose case*, and quoting the act of Congress so far as applicable, says: "It is apparent that the interstate commerce act expressly recognizes the right of the telegraph company to charge for repeated messages different rates from those charged for unrepeated messages."

Another very recent case passing upon this question in the light of the act of Congress is that of *Telegraph Co.* v. *Dant*, decided by the Court of Appeals of the District of Columbia, 42 App. D. C. 398, 54 L. R. A. (N. S.) 685, 1915-B. The court said: "The applicable portions of the act of June 18, 1910, entitled 'An act to create a commerce court and to amend the act entitled an act to regulate commerce,' read: 'All charges made . . . for the transmission of messages by telegraph, telephone, or cable, as aforesaid, or in connection therewith, shall be just and reasonable . . : provided, that messages by telegraph, telephone, or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages.' . . . By this act express authority is given for the different classifications of messages, and the charges of different rates for the different classes is also expressly authorized. Repeated and unrepeated messages were well known to the art, and of course, it must be presumed that Congress intended the words to be given their ordinary meaning. Prior to the enactment of this statute, as we have seen, the court

of last resort had ruled that in the absence of State statutes to the contrary it was competent for a telegraph company to make such classification of its messages. *Primrose* v. *Western Union Tel. Co.*, 154 U. S. 1 (14 Sup. Ct. 1098, 38 L. Ed. 883). Congress, therefore, in express terms, has sanctioned the practice theretofore existing.''

The Supreme Court of Texas holds in favor of the contention of the plaintiff. We are, however, of opinion that the weight of authority and the better reason sustain the conclusion we have reached that the defendant company is entitled to the protection afforded it by the stipulation in question, and is only liable to the plaintiff for the cost of transmitting the unrepeated message sent by him.

The plaintiff further contends that the classification and stipulation of the company for interstate messages had never been submitted to the Interstate Commerce Commission, nor in any wise authorized. It is sufficient to say that the act of Congress bringing telegraph companies under the regulation of the Interstate Commerce Commission, does not require them to file their contract forms or tariffs with the Commission.

The plaintiff further contends that the stipulation in question did not bind him because neither the plaintiff nor his agent knew that there was such a stipulation, and that the telegram handed the company was pasted on the night telegram blank under such circumstances that his agent did not handle the night telegram blank, nor read the same, nor have any opportunity to read it.

The testimony of the plaintiff himself shows that he had been in business for about thirty years, that during that time he frequently sent and received telegrams, and that he kept the blanks in his office. He

says he knew that there was something printed on the blanks but that he had never read it and did not know what it was. On the face of these blanks there is printed in large black type the following: "Send the following telegram subject to the terms on back hereof, which are hereby agreed to." And the first stipulation at the top of the page is the one at issue in this case. The plaintiff's alleged inattention during his long years of familiarity with and use of telegrams cannot now be relied upon to defeat the defendant company of the protection to which it is entitled. To do so would be to allow the plaintiff to profit by his own neglect.

"When one writes a message upon one of these blanks, or procures another as his agent to write it for him, and signs the same or procures his agent to sign his name to it, without dissent, he will in the absence of fraud be estopped from denying the binding force of such regulations on the message, as to which we have referred, notwithstanding he did not read them. He will not be permitted to show that he did not read or understand the conditions contained in the printed regulations." *Telegraph Co.* v. *Prevatt,* 149 Ala. 617, 43 So. 106.

In *Breese* v. *U. S. Tel. Co.* 48 N. Y. 132, 8 Am. Reports 526, it is said: "A party using such a blank and writing his dispatch thereon, assents to the terms and conditions on which it is to be sent. If he omits to read or to become informed of them, it is his own fault. A contract voluntarily signed and executed by a party, in the absence of misrepresentation or fraud, with full opportunity of information as to its contents, cannot be avoided on the ground of his negligence or omission to read it, or to avail himself of such information."

The current of decisions on this point is in line with those from which we have quoted. *Redpath* v. *Tel. Co.*, 112 Mass. 71, 17 Am. Rep. 69; *Cole* v. *Tel. Co.*, 33 Minn. 227, 22 N. W. 385; *Becker* v. *Tel. Co.*, 11 Neb. 87, 7 N. W. 868, 38 Am. Rep. 356.

There is no merit in the contention that the stipulations contained in the night letter blank did not form part of the contract of transmission because the clerk of the company attached the blank on which the message was originally written to the night letter blank. This was done in the presence of the plaintiff's agent, who requested that the message be sent as a night letter, and manifestly for the purpose of saving him the trouble of writing it over on the night letter blank. The stipulation in the night letter blank is identical with that in the blank used by the plaintiff, so that it is immaterial whether he treats the first or second blank as his contract.

There is no error in the judgment complained of and it is affirmed.

*Affirmed.*