## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## H. W. WILLIAMS & SONS, INC., V. POSTAL TELEGRAPH-CABLE COMPANY.

### March 21, 1918.

1. TELEGRAPHS AND TELEPHONES—*Interstate Commerce—Action of Congress Exclusive.*—By act of June 18, 1910, amending an act to regulate commerce (chapter 309, 36 Statute at Large, 539), Congress has undertaken to occupy the field of interstate commerce by telegraph; and has declared that as to all such business, telegraph, telephone and cable companies are common carriers within the meaning and purposes of the act. The act further prescribes that with respect to that class of business telegraph companies shall print and publish rates, rules, classifications, regulations and practices, and file the same with the Interstate Commerce Commission; and confers upon that tribunal jurisdiction to determine what rates, etc., are just and reasonable. This action on the part of Congress is exclusive, superseding State laws on the subject, and of course is controlling upon State courts.

2. TELEGRAPHS AND TELEPHONES—*Interstate Commerce—Unrepeated Message.*—Congress having permitted telegraph companies to classify their interstate messages into repeated and unrepeated messages, and charge different rates therefor, a regulation of such a company of which the sender of the telegram has notice, limiting the liability of the company on unrepeated interstate messages to the cost of the message is reasonable and will be enforced.

3. TELEGRAPHS AND TELEPHONES—*Unrepeated Message—Case at Bar.*—Plaintiff brought his action against the defendant telegraph company for failure through carelessness and neglect to deliver a telegram to plaintiff promptly, in consequence of which plaintiff suffered a loss. The telegram was an interstate message and was unrepeated; and the blank upon which it was written contained the usual stipulation that it was sent "subject to the terms on the back thereof, which are hereby agreed to." These terms contained, among others, the following clause: "The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of

any unrepeated telegrams, beyond the amount received for sending the same." ·

*Held:* That the telegraph company was not liable.

Error to a judgment of the Circuit Court of Northampton county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

S. J. *Turlington* and *Jeffries & Jeffries,* for the plaintiff in error.

*Jno. N. Sebrell, Jr.,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

H. W. Williams & Sons., Inc., which we shall refer to as "plaintiff," brings error to a judgment of the Circuit Court of Northampton county sustaining the demurrer of the Postal Telegraph-Cable Company, a corporation, which will be designated as "defendant," and dismissing the suit.

The material allegations of the declaration are: That at 4:45 P. M. on Saturday, June 17, 1916, H. M. Williams Brokerage Co., a brokerage company of Buffalo, New York, delivered to defendant at that city the following telegram, addressed to plaintiff at Cape Charles, Virginia: "Market closed for day if you agible fob for three cars let them come here if good stock wire car numbers mail bills of lading bender. H. M. Williams Brokerage Co." This cipher telegram was understood between the sender and plaintiff to mean: "Market closed for day. If you cannot get $4.00 F. O. B. for three cars, let them come here if good dry stock, wire car numbers, mail bills of lading. All well here." By that telegram the H. M. Williams Brokerage Company offered on that day to purchase from plaintiff certain car-

loads of potatoes at the price of $4.00 per barrel, if the offer was accepted at once, and the potatoes forthwith shipped according to the terms of the telegram. But that defendant did not send and deliver the telegram promptly, and through carelessness and neglect failed to deliver the same until 11:45 A. M. on Monday, June 19, 1916. That by reason of the delay of defendant in delivering the telegram, the potatoes were not shipped in time to be delivered in accordance with its terms; and when delivered the market had fallen, in consequence of which plaintiff suffered a loss of $429.43 for the recovery of which this action was brought.

The telegram was an interstate message and was unrepeated; and the blank upon which it was written contained the usual stipulation that it was sent "subject to the terms on the back hereof, which are hereby agreed to." These "terms" are familiar to the profession, and need not be her repeated at large. Suffice it to say that they contained, among others, the following clause: "The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any UNREPEATED telegrams, beyond the amount received for sending the same."

By act of June 18, 1910, amending an act to regulate commerce (Ch. 309, 36 Stat. at Large, 539), Congress has undertaken to occupy the field of interstate commerce by telegraph; and has declared that as to all such business, telegraph, telephone and cable companies are common carriers within the meaning and purposes of the act. The act further prescribes that with respect to that class of business telegraph companies shall print and publish rates, rules, classifications, regulations and practices, and file the same with the Interstate Commerce Commission; and confers upon that tribunal jurisdiction to determine what rates, etc., are just and reasonable. This action on the part of Congress is exclusive, superseding State laws on the sub-

ject, and of course is controlling upon State courts.

The principles here involved were gone into so fully by this court in the case of *Boyce* v. *Western Union Telegraph Co.*, 119 Va. 14, 89 S. E. 106, as to obviate the necessity for extended discussion. It was there held that "Congress having permitted telegraph companies to classify their interstate messages into repeated and unrepeated messages, and charge different rates therefor, a regulation of such companies of which the sender of the telegram has notice, limiting the liability of the company on unrepeated interstate messages to the cost of the message is reasonable and will be enforced."

This case is cited with approval by the Interstate Commerce Commission in the case of *J. L. & Myrtle Cultra, Partners Trading as the Clay County Produce Company* v. *Western Union Telegraph Co.*, decided May 17, 1917. It was there held that "The defendant's repeated, unrepeated, and special value rates for the transmission of interstate messages, with the restricted liability attaching thereto, being expressly sanctioned by section 1 of the act to regulate commerce, are binding upon it as well as upon all others when such rates have been lawfully fixed and offered to the public, and may not be departed from until they have lawfully been changed."

We fail to appreciate the force of the contention, that the stipulation attached to the blank on which this message was written, that "the company shall not be liable for * * * delays in the transmission or delivery, or for non-delivery, of any *unrepeated* telegrams, beyond the amount received for sending the same," is *inapplicable* to the case in judgment. The gist of the action was alleged *delay* in the *transmission* and *delivery* of the telegram in question, and the message being unrepeated exemption from liability in express terms applied to that situation. In the above case it is true that the Interstate Commerce Commission points

out that certain provisions of the act of Congress were not applicable to the case before them; but there is no suggestion that the clause referred to would be inapplicable to the facts alleged in plaintiff's declaration. On the contrary, they say: "It seems clear, therefore, that the Congress in recognizing, by the amendment to the act above quoted, these three classes of messages with the different charges attached, has also recognized a distinction in the defendant's liability under them, and has sanctioned this distinction for the future, subject, of course, to the general provisions in the act requiring all rates and all rules and regulations affecting rates, to be reasonable and uniform in their application, under like circumstances, for the different kinds of service offered. Such classification of its messages, with the different rates and liabilities attaching to them, having affirmative recognition in the act itself, it follows that when lawfully fixed and offered to the public, they are binding upon the defendant, and upon all those who avail themselves of its services, until they have been lawfully changed. Abundant authority for this view is found in numerous decisions by the State and Federal courts." *Unrepeated Message Case,* 44 I. C. C. R. 670, 678.

The judgment of the Circuit Court of Northampton county is plainly right and is affirmed.

*Affirmed.*