[Civil No. 193.   Filed November 29, 1887.]

[S. C. 15 Pac. 712.]

T. L. STILES, Assignee, Plaintiff and Respondent, v. THE WESTERN UNION TELEGRAPH CO., Defendant and Appellant.

1. TELEGRAMS—DELAYS IN DELIVERING MESSAGES—GROSS NEGLIGENCE

—DAMAGES—CONTRACT LIMITING LIABILITY.—Plaintiff, as assignee of Hudson & Co., bankers, brings this action to recover damages for delay in delivering a telegram. Plaintiff, on the evening of the assignment, delivered a telegram to defendants with instructions to forward it immediately to a branch house of assignors. The agent of defendant received the message in ample time to deliver it before banking hours in the morning, but withheld it. The bank opened and defendant's agent withdrew money belonging to himself and his company. Other depositors also withdrew funds. The message was then delivered and the bank remained opened for a half hour longer. Certain terms limiting liability were affixed to the message. *Held,* that defendant's agent was guilty of gross negligence and palpable misconduct; that no terms annexed to the message could excuse the same, and that the company was liable for all money withdrawn prior to the time of the delivery of the message but not for such as was voluntarily paid out thereafter.

BARNES, J., dissenting. The act of the agent in withholding the message being willful the defendant was liable for all injury consequent upon the wrong. Punitive damages would have been proper.

APPEAL from a Judgment of the District Court of the First Judicial District in and for the County of Pima. Reversed.

The facts are stated in the opinion.

C. C. Stephens, (Richard Brinsley Carpenter, of counsel), for Appellant.

Even if the Company's agent did wilfully delay the delivery of the telegram for the purpose of drawing his money out of the bank, it was an act entirely outside of the scope of his authority, and, as a matter of law, the company is no more responsible for his act, than would be a railroad company when its conductor shoots a passenger, or an engineer maliciously and wilfully runs a traveller down, who, on a highway, is crossing a track; or, when he recklessly or maliciously or unnecessarily blows the whistle of his engine and causes a team travelling on a highway parallel to the railroad to run away. *Hahn* v. *R. R. Co.,* 51 Cal. 607; *Little Miami R. R. Co.* v. *Witmore,* 19 Ohio St. 110, 2 Am. Rep. 373; *Evansville, etc. R. R. Co.* v. *Baum,* 26 Ind. 70; *Priest* v. *Hudson*

*River R. R. Co.,* 65 N. Y. 589; *Peeples* v. *Brunswick, etc., R. R. Co.,* 60 Ga. 281; Rorer on R. R., pp. 324, 325, 842.

Upon the broader ground of the measure of damages it is a well established rule of law, that only such damages can be recovered as are natural and proximate consequence of the act complained of; compensation for injury received; commensurate with it; nothing more or less. 2 Black Comm., 438; Greenleaf on Ev. 256; *Griffin* v. *Colver,* 16 N. Y. 489, 69 Am. Dec. 718; *Eowood* v. *Western Union Tel. Co.,* 45 N. Y. 549; Sedg. on the Measure of Dam. Vol. 1, p. 39. The defendant can not be held liable for what occurred after the message was placed in the hands of the officers of the bank.

The law does not allow damages for avoidable consesequences. *Hamilton* v. *McPherson,* 28 N. Y. 77, 84 Am. Dec. 330, *Milton* v. *Hudson River Steamboat Co.,* 37 N. Y. 214; *Grindle* v. *Eastern Exp. Co.,* 67 Maine, 317, 24 Am. Rep. 31; *Miller* v. *Mariners' Church,* 7 Greenl. Rep. 51, 20 Am. Dec. 341; *Baldwin* v. *United States Tel. Co.,* 45 N. Y. 744, 6 Am. Rep. 165; Sedg. on the Measure of Damages, pp. 93-95 and cases cited.

John Haynes, and J. A. Anderson, for Respondent.

"A principal who contracts to do a particular thing is liable for his agent's torts which prevent the performance of the contract." Wharton on Agency, Sec. 487. The fact that appellant is a corporation does not alter the rule. Morawetz on Corporations, Sec. 95.

But aside from all that, the appellant has ratified the acts of its agent, and therefore stands as though it had ordered the message withheld. The money was deposited in the name of the appellant, as shown directly by the testimony of Eccleston, though Kingsbury testifies that about $1000 of it was his, and the remainder belonged to the Company. After being fully informed of the circumstances by Mr. Stiles' letter, and afterward by the complaint in this action, the appellant has retained the fruits of its agents wrong, and therefore has fully ratified his act. Morawetz, Sec. 96.

The burden of proving that the damages which have been

sustained in such cases could have been prevented, unquestionably rests upon the party guilty of the breach of contract. *Hamilton* v. *McPherson*, 28 N. Y., 76-7, 84 Am. Dec. 330, *Costigan* v. *Mohawk C. R. Co.*, 2 Denio 609, 43 Am. Dec. 758. That therefore was a question of fact which was tried and decided, and the Court found against the appellant, and this court will not disturb findings of the trial court where there is substantial evidence to sustain them. *Tombstone M. Co.* v. *Way Up. M. Co.* 1 Ariz. 426, 25 Pac. 794; *Burter* v. *County of Pima* (Ariz.), 11 Pac. 62; *Frey* v. *Lowden*, 70 Cal. 550, 11 Pac. 838; *Kill* v. *Tubbs*, 32 Cal. 332; *Miller* v. *Balthasser*, 78 Ill. 302.

The great weight of authority favors the proposition that contracts of telegraph companies limiting their liability are against public policy. *Bartlett* v. *Western Union Tel. Co.*, 62 Maine, 209, 16 Am. Rep. 437; *Thompson* v. *Western Union Tel.*, 64 Wis. 531, 25 N. W. 789, 54 Am. Rep. 644; *Tyler* v. *Same*, 60 Ill. 421, 14 Am. Rep. 38; *Western Union Tel. Co.* v. *Tyler*, 74 Ill. 168, 24 Am. Rep. 279; *Marr* v. *Western Union Tel. Co.*, 85 Tenn. 529, 3 S. W. 496; *Western Union Tel. Co.* v. *Hyer Bros.*, 22 Fla. 637, 1 Am. St. Rep. 222, 1 South. 129.

PORTER, J.--This cause comes here on motion for a new trial on the grounds of insufficiency of the evidence, the findings and decisions being against law, and errors in law. This action was brought by T. L. Stiles, as assignee of Hudson & Co., against the Western Union Telegraph Company, to recover damages for the delay in the delivery of a telegraphic message sent by the plaintiff from Tucson to Tombstone. It appears that Hudson & Co. on the ninth day of May, 1884, had a banking-house in Tucson, with a branch establishment at Tombstone. Mr. M. B. Clapp, to whom the message was sent, was the cashier of the branch house, and there managed the bank. That on the evening of the ninth of May an assignment of all the property of Hudson & Co., both at Tucson and at Tombstone, was made to T. L. Stiles. Thereupon, on acceptance of the trust, the plaintiff, assignee, on the evening of the ninth of May, sent by defendant a telegram to Clapp, and

with directions to forward the telegram immediately. The telegram was received by the operator at Tombstone at 9:15 of May 9th, and not delivered till the morning of the 10th, between 9:15 and 9:30, and after the bank was opened for business. The telegraph office at Tombstone was less than two blocks from the bank. Clapp's residence was in the same town, and he was there on the evening of the 9th. The usual time for delivering dispatches, when too late the night before, was from 8:30 to 9 A. M. The office of the telegraph company was opened at 8 o'clock A. M. The bank opened at 9 o'clock A. M. Before the delivery of the message the operator (Kingsberry) drew from the bank the sum of $1,167.71, and other smaller sums were withdrawn from the bank before the message was delivered.

On the opening of the bank on the 10th, the money in the vaults had been placed upon the trays on the counter for the day's business. On the reception of the dispatch, Clapp, the cashier, told the employes of its contents, and directed to have the money put back in the vaults, and then went to see plaintiff's attorney, and in the mean time directed the bank to be kept open. The business was on until the attorney came, and put up notice, which was one-half hour after the delivery of the message. The sum of $5,102.19 was paid out to unpreferred creditors, including the sum of $1,167.71 paid on the check of the operator. The operator testified that $1,000 of the $1,167.71 belonged to him, and the balance to defendant. The books of the bank show an itemized statement of the amounts drawn out by each depositor, and among them is Western Union Telegraph Company, $1,167.71. But that fact is immaterial. There can be no dispute but that the conduct of the operator was grossly negligent, and the defendant cannot be relieved of responsibility caused by his misconduct. No terms annexed to the message can excuse this failure to deliver the message before the opening of the bank; such failure to deliver being gross negligence and palpable misconduct, and the telegraph company must bear every legitimate consequence of its non-delivery.

But does that consequence involve anything which in this case happened after the message came to the hands of the bank? The telegraph company must be held for every dol-

lar paid out before the message was delivered. We can see no good reason why it should be for the money afterwards paid, for any payment made after the delivery of the message were entirely voluntary on the part of the bank. A justification is sought because of the fear of a mob. No such exhibition existed, and the excuse cannot be sustained. The teller testified that he paid checks because he feared, if he did not, that a rush would be made on them; that when he left the bank a large crowd had assembled there; but while the bank remained opened for business there was no excitement, and but four people there outside of the employes. Why could not the employes of the bank have closed the outside doors, and then put the money in the vaults? Besides, it would take only a few moments to handle $20,000 or $30,000, which amount was in the trays in which coin is usually kept in banks. It not being otherwise shown, we take it that most of the money, as it is the custom of banks in Arizona, was in gold coin, and only silver enough to make change.

We must conclude that the finding "that, by reason of said failure to deliver message, the plaintiff paid out to unpreferred creditors the sum of $5,102.19," is erroneous. The record does not disclose the full amount paid out before the delivery of the message, saying only it was "other smaller sums," and there must be a new trial, unless plaintiff will, by written consent, accept from defendant the sum of $1167.71 with legal interest from the ninth day of May, 1884, in which case judgment for that sum is ordered to be entered.

WRIGHT, C. J., (concurring.) We are clearly of the opinion that the defendant should not be held liable for amounts of money paid out after the dispatch was received at the bank. It required only a moment's time to step to the front door of the bank, and close it. The law in such case does not hold the defendant responsible for avoidable damages. Undoubtedly a large portion of the money paid out would have remained in the bank if it had been closed immediately upon the reception of the dispatch. I therefore concur.

BARNES, J., (dissenting.)    The evidence in this case shows that the operator of defendant at Tombstone withheld the message from about 9 o'clock in the evening, "on purpose," as he swears, that he might draw out the money deposited to credit of defendant in the bank; that he waited until the bank opened, then went in, and drew out the funds of defendant. He kept the fact of the assignment secret until then. He then went to his office, and handed the telegram to the messenger boy, who had to make a letterpress copy and enter it on the delivery-book, put it in an envelope, and address it, and then go to the bank and deliver the message. Meantime the bank was open in due course of business. This was a willful, and not a negligent act of the operator. He was not simply speculating on the information contained in the message to his profit, but he was using the information to his profit and the customer's injury. The defendant, after full knowledge of the facts, ratified the act, and refused to refund the money so wrongfully drawn out. The defendant is liable for all injury to plaintiff consequent upon this willful wrong. Smart money or punitive damages would have been proper. 2 Thomp. Neg. 851; *Davis* v. *Western Union Telegraph Company*, I Cin. Rep. 100; 2 Thomp. Neg. 1264; *Edelmann* v. *St. Louis T. Company*, 3 Mo. App. 503; *Levenworth Company* v. *Rice*, 10 Kan. 426; *Jackson* v. *Schmidt*, 14 La. Ann. 807; *Illinois Central Railroad Company* v. *Welch*, 52 Ill. 184; *Murphy* v. *New York, etc., Railroad Company*, 29 Conn. 496; *Welch* v. *Durand*, 36 Conn. 182, 4 Am. Rep. 55; *Whipple* v. *Waipole*, 10 N. H. 130; *Hawes* v. *Knowles*, 114 Mass. 518, 19 Am. Rep. 383; *Jacobs* v. *Louisville, etc., Railroad Company*, 10 Bush, 263; *Bass* v. *Chicago, etc., Railway Company*, 39 Wis. 636; *Peoria Railroad Company* v. *Loomis*, 20 Ill. 251, 71 Am. Dec. 263; *Wallace* v. *New York*, 2 Hilt. 442; *Wallace* v. *New York*, 18 How. Pr. 169.

True the officers of the bank ought to have closed the bank when informed of the message; but if they did not, who should suffer? They were not plaintiff's agents. They were joint and several wrong-doers with defendant after the message was delivered. Before that they were his unwitting instruments. The wrong-doer who wrongfully and will-

fully caused the bank to open, should be responsible for his agents, or the instruments of his wrong. To say that a telegraph company, a common carrier of messages, may use the information so received to the injury of a customer, and not be responsible for the injuries consequent to the customer, is monstrous. For these reasons I dissent from the opinion of the court.