WESTERN UNION TELEGRAPH CO. V. THOMAS. W. LOWREY.

[FILED SEPTEMBER 15, 1891.]

1. **Telegraph Companies:** CANNOT LIMIT LIABILITIES FOR NON-DELIVERY. Under the provisions of section 12, chapter 89*a*, Compiled Statutes, a printed stipulation on a message blank to the effect that the telegraph company should not be liable for a failure to deliver an unrepeated message, in a sum greater than that paid for the service, is no defense to an action for damages for delay in delivering an unrepeated message.

2. ———: STATUTE REGULATING. The title to the act which took effect June 1, 1883, in these words: "An act to prohibit extortion and discrimination in the transmission of telegraph dispatches," is broad enough to cover the provisions in section 12 of said act.

3. A judgment will not be reversed for error committed in the giving of an instruction when the verdict is the only one that should have been returned under the evidence.

4. Error cannot be predicated upon the admission of incompetent testimony, when received without objection.

ERROR to the district court for Lancaster county. Tried below before CHAPMAN, J.

*Pound & Burr*, for plaintiff in error, cited, as to the title of the act: *Tecumseh v. Phillips*, 5 Neb. 305; *White v. Lincoln*, Id., 505; *State, ex rel. Jones, v. Lancaster Co.*, 6 Id., 234, 474; *B. & M. R. Co. v. Saunders*, 9 Id., 507; *Ives v. Norris*, 13 Id., 252; *Dawson Co. v. McNamar*, 10 Id., 279; *Holmberg v. Hauck*, 16 Id., 337; *State v. Van Duyn*, 24 Id., 591; *Messenger v. State*, 25 Id., 676; *Becker v. Western Union Tel. Co.*, 11 Id., 87. As to the testimony of the witness Schnider: 1 Greenl. Ev., secs. 113, 114; Story, Agency, secs. 137, 154; Mechem, Agency, secs. 714, 715; *Hawker v. R. Co.*, 15 W. Va., 628; *R. Co. v. Hawk*, 72 Ala., 112; *R. Co. v. O'Brien*, 119 U. S.,

99; *Durkee v. R. Co.*, 69 Cal., 533; *Luby v. R. Co.*, 17 N. Y., 131; *Williamson v. R. Co.*, 144 Mass., 148; *Keyser v. R. Co.*, 33 N. W. Rep. [Mich.], 867; *Wilson v. Barkalow*, 11 O. St., 470. As to the stipulation exempting the company from liability: *Western Union Tel. Co. v. Jones*, 95 Ind., 228; *Heimann v. Tel. Co.*, 57 Wis., 562; *Wolf v. Tel. Co.*, 62 Pa. St., 83; *Young v. Tel. Co.*, 65 N. Y., 163; *Bumstead v. Ins. Co.*, 12 Id., 81; *Mason v. Harvey*, 8 Exch. Rep. [Eng.], 819; *Roach v. Ins. Co.*, 30 N. Y., 546; *Riddlesbarger v. Ins. Co.*, 7 Wall. [U. S.], 390; *Farnham v. R. Co.*, 55 Pa. St., 53; *Express Co. v. Harris*, 51 Ind., 127; *Cole v. Tel. Co.*, 33 Minn., 227; *Express Co. v. Caldwell*, 21 Wall. [U. S.], 264. That the damages allowed were excessive: Wood's Mayne on Damages, sec. 14; *Hadley v. Baxendale*, 9 Exch. Rep. [Eng.], 341, 354; *Griffin v. Colver*, 16 N. Y., 489; *Daniel v. Tel. Co.*, 61 Tex., 453; *Baldwin v. Tel. Co.*, 45 N. Y., 744; *Clement v. Tel. Co.*, 137 Mass., 463.

*John P. Maule*, and *C. M. Parker*, *contra*, cited as to Schnider's testimony: Bouvier's Law Dic., 579; *McLeod v. Ginther*, 80 Ky., 402; *Mitchum v. State*, 11 Ga., 615; *Morse v. R. Co.*, 6 Gray [Mass.], 450.

NORVAL, J.

This action was brought in the court below by Thomas W. Lowrey against the Western Union Telegraph Company to recover damages for failure to transmit and deliver a message within a reasonable time after its receipt.

Upon a trial to a jury verdict was returned for the plaintiff for the sum of $206.09 principal, and $21.03 interest. From a judgment thereon the defendant prosecutes a petition in error.

There is no controversy upon the facts. On the 29th day of June, 1888, the defendant in error had $54,953\frac{22}{100}$ bushels of corn in the possession of Norton & Worthington,

commission merchants in the city of Chicago, which he desired them to sell for him, and on that day at 12 o'clock noon Lowrey delivered to the plaintiff in error at its office in the city of Lincoln, Nebraska, to be immediately transmitted and delivered to Norton & Worthington, in the city of Chicago the following message:

"6, 29, 1888.

"To Norton & Worthington, Chicago, Ill.: Sell all corn you have in store, and telegraph how many cars you sell, and sell balance on arrival.     THOMAS W. LOWREY."

The telegraph company and Norton & Worthington each had an office in Chicago in the same building. When the message was delivered to the company the sender informed the operator that it was important and that it must be sent and delivered at once. The message was not delivered to Norton & Worthington until two o'clock and twenty-five minutes in the afternoon of the same day, which was too late to make the sale that day. To have enabled them to sell the corn on June 29, it was necessary that the dispatch should have reached the sendees from three to five minutes before 1 o'clock of the afternoon of the same day. The evidence shows that the usual time required to send a message from Lincoln to Chicago is ten minutes, and had the dispatch been promptly sent and delivered, it would have been received by the commission merchants in time to have sold the corn on June 29. But the message being received by them after the close of the corn market, Lowrey's corn was not sold until the next day, at which time the market declined so that he received for the corn $206.09 less than it would have brought had it been sold the previous day. No testimony was offered by the defendant, on the trial, to excuse the delay in transmitting and delivering the message. The blank upon which the dispatch·was written contained the following printed condition: "Errors can be guarded against only by repeating a message back to the sending station for comparison, and the company will not

hold itself liable for errors or delays in transmission or delivery of unrepeated messages beyond the amount of tolls paid thereon, nor in any case where the claim is not presented in writing within sixty days after sending the message." Lowrey did not order the message repeated, and for this reason it is contended by the company that, under the above stipulation, it is not liable beyond the amount paid for sending the message.

The defendant requested the court to instruct the jury "that if they believe from the evidence that the plaintiff had notice and knowledge of the contents and terms printed on the blank on which the message was written at the time he delivered, or caused the same to be delivered, to the defendant, and if the jury further find from the evidence that the plaintiff, at the time he delivered, or caused said message to be delivered, to the defendant, did not order the same to be repeated, that then and in that case the plaintiff can only recover for the delay in the transmission of said message the amount paid by him to the defendant for sending said message."

The instruction was refused, and the court charged the jury to the effect that if they found that there was no agreement between the plaintiff and defendant as to the company's liability for delay in the transmission and delivery of the message, outside of the printed condition on the blank on which the telegram was written, then they should entirely disregard said printed stipulation and give it no weight in the consideration of the case. We do not think the court erred in refusing to charge the jury as requested by the defendant and in instructing that the stipulation in the printed blank was no defense to the action. The message, although not repeated, was correctly transmitted to the operator in Chicago and accurately transcribed by him. Nothing more could have been accomplished had the message been repeated to the sending office. It certainly could not have expedited its delivery. The stipu-

lation referred to, limiting the defendant's liability, is no defense to the suit. (*Railway Co. v. Wilson*, 69 Tex., 739; *W. U. Tel. Co. v. Broesche*, 10 S. W. Rep. [Tex.], 734; *Telegraph Co. v. Way*, 83 Ala., 542 ; *White's Case*, 14 Fed. Rep. [Kan.], 710; *Tyler's Case*, 74 Ill., 168; *W. U. Tel. Co. v. Henderson*, 7 South. Rep. [Ala.], 419 ; *Gulf, C. & S. F. R. Co. v. Miller*, 7 S. W. Rep. [Tex.], 653.)

Again, the printed stipulation on a telegraph blank, limiting the liability of a telegraph company, unless the message is repeated, is no defense to an action for damages for delay in delivering an unrepeated message.

Section 12 of chapter 89*a* of the Compiled Statutes of this state provides that "any telegraph company engaged in the transmission of telegraphic dispatches is hereby declared to be liable for the non-delivery of dispatches entrusted to its care, and for all mistakes in transmitting messages made by any person in its employ, and for all damages resulting from a failure to perform any other duty required by law, and any such telegraph company shall not be exempted from any such liability by reason of any clause, condition, or agreement contained in its printed blanks." Under the provision of this section the printed condition on the telegraph blank, limiting the liability of the telegraph company for mistakes or delays in the transmission or delivery of unrepeated messages, is void. (*Kemp v. W. U. Tel. Co.*, 28 Neb., 661.)

The case of *Becker v. Western Union Telegraph Company*, 11 Neb., 87, which held that a telegraph company had the right, by reasonable regulations relative to sending messages, to limit its liability for errors not occasioned by the negligence of its employes, was decided before the above section was passed by the legislature, and the rule announced in that case is not applicable to the case at bar.

It is contended by the plaintiff in error that the provisions of section 12 are not within the title of the act, and are therefore in conflict with section 11, article 3, of the

constitution, which provides that "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." This position is unsound. The act is entitled "An act to prohibit extortion and discrimination in the transmission of telegraph dispatches." The title is broad and comprehensive enough to cover every act of extortion or discrimination by telegraph companies, and the object and purpose of the section in question is germane to the title of the act. It runs through the entire act that telegraph companies are required, with impartiality and without discrimination, to use due diligence in the transmission and delivery of dispatches, and the rates must be uniform for the same service. In furtherance of that object, section 12 was adopted by the legislature making telegraph companies liable for all damages resulting from the failure to correctly and promptly transmit and deliver telegrams entrusted to their care, and prohibiting them from limiting their liability by printed conditions on message blanks. If telegraph companies were permitted, by printed stipulations, to limit their liability for mistakes or delays in the transmission or delivery of unrepeated messages, the same care and diligence would not be exercised in forwarding them as is bestowed upon repeated messages, where their liability is not limited. To prohibit telegraph companies from discriminating between its patrons, was one of the purposes of the section in question, and the object of the section being embraced by the title of the act, of which it is a part, it is not repugnant to the section of the constitution above quoted.

It is insisted that the court erred in refusing to give to the jury the defendant's eighth request, which is as follows: "The court instructs the jury that if they find from the evidence that the defendant received said message without notice or knowledge of any fact indicating that it was important to the plaintiff that said message should be transmitted to Chicago before 1 o'clock of the same day on

49

which it was delivered to the defendant, or that any special damage would or might result from a failure to transmit said message to Chicago before 1 o'clock of said day, then the defendant is not liable to the plaintiff for any damage resulting to the plaintiff in consequence of said message not reaching Chicago before 1 o'clock of said day, beyond the price paid by plaintiff to the defendant for sending said message."

· There was no error in refusing to give this charge to the jury. It assumes that there was evidence before the jury from which they could find that the company received the message without notice that it was important and should be transmitted promptly, when there was no such evidence. On the contrary, it is undisputed that the plaintiff informed the operator at Lincoln, when the message was received, that it was important and to "rush it." Besides, the language of the message was, of itself, sufficient to indicate to the operator the urgency of the dispatch and the necessity of its prompt transmission and delivery. The company having failed to transmit and deliver it in due time, it is liable for the damages naturally and proximately resulting from such failure, which would be the depreciation in the market value of the corn between the time when the dispatch should have been delivered to the sendees, and the following day, when the corn was sold.

The defendant's third, fourth, and fifth requests were in effect the same as the eighth, and for the reasons stated were properly refused.

In the last paragraph of the fifth instruction, given at the request of the plaintiff, the jury were told, in effect, that the defendant was liable for any delay in the transmission of the message, even if it was not guilty of any negligence, and sent the dispatch as soon as it could, while in the second instruction, given at the request of the defendant, the jury was instructed "that the defendant is not liable for the mere mistake, accident, or delay, in the

transmission of the dispatch, if the defendant company and its agents exercised ordinary care in transmitting the same." These instructions are clearly inconsistent, and doubtless one was given through inadvertence. The one given on behalf of the plaintiff holds the defendant responsible for the delay in the delivery of the message, even though it exercised reasonable or ordinary care, while the other instruction exonerates the company from liability if its agents exercised ordinary care, and were free from negligence.

There was no conflict in the evidence, and the court would have been justified in directing a verdict for the plaintiff. As the verdict returned is the only one that could properly have been found, under the evidence, the error committed in the giving of conflicting instructions could not have prejudiced the defendant, and the judgment will not be reversed on account of such errors. (*Converse v. Meyer*, 14 Neb., 190; *O'Hara v. Wells*, Id., 403; *Knowlton v. Manderville*, 20 Id., 59.) For the same reasons the other assignments of error based upon other portions of the charge of the court, alleged to be erroneous, are overruled without further comment.

It is contended that the court erred in permitting the witness Schnider to testify to a conversation he had with the Lincoln operator after the sending of the message. Mr. Schnider was the agent of plaintiff, and gave the message to the operator for transmission. The witness, two or three days after sending the dispatch, called upon the operator for a copy of it. The record of his testimony as to what the operator said is as follows:

Q. What did he say as to when it was sent?

(The defendant objects, as hearsay, incompetent, immaterial, and irrelevant. Overruled, and exception.)

A. He said that he could not get Omaha to get it off.

Q. What did he say as to when he sent it from that office?

A. About 1 o'clock. He said he got it out of his office, off of his hands, about 1 o'clock.

Q. What office was that?

A. That was from the Western Union telegraph office, in this city.

It will be observed that the only question objected to was the first one, and the answer to it was not responsive to the question, nor does it state the time the dispatch was sent. When the witness was subsequently asked to state what the operator said as to the time the message was transmitted from Lincoln, no objection was made to the question nor to the answer given, so no question is presented for consideration. Error cannot be predicated upon the admission of incompetent testimony where the same is received without objection.

Conceding that the plaintiff should have presented his claim for damages in writing to the defendant within sixty days after the message was sent, as required by the printed conditions on the blank on which the dispatch was written, as claimed by the company, but which we do not decide, yet we think the evidence shows a substantial compliance with the clause referred to.

H. C. Mahoney testified, in effect, that he was the manager of the Western Union telegraph office in Lincoln, in July, 1888, and received from Mr. Maule, one of the plaintiff's attorneys, a written demand for a settlement of the loss claimed by Mr. Lowrey by reason of the delay in delivering the telegram in question, and in response he sent the following letter:

"LINCOLN, NEB., July 24.

"J. P. Maule, Esq., Att'y at Law, Lincoln.—DEAR SIR: Your letter of July 19 received. The matter is being investigated. Please furnish particulars as to how Mr. T. W. Lowrey suffered a loss of $206.09 as alleged.

"H. C. MAHONEY."

The above was all the testimony introduced on the subject. While neither the written claim which was presented

to the company, nor a copy of it was produced on the trial, nor was parol evidence of the contents of the writing given, yet it does appear that a written demand of some kind was made for the payment of the 'loss, and the company's answer thereto shows that it was for the exact amount claimed in this action.    This was sufficient, and no other or further proof was necessary.

There is not the slightest foundation in the evidence upon which to base the charge that the plaintiff was guilty of contributory negligence.    While he telephoned the message from his place of business in Lincoln to the telegraph office, that was his usual custom, and the defendant made no objections thereto.    But it is said that it was telephoned at noon while the whistles were blowing, and it is unknown whether the operator heard what was said about the message being important.    He seems to have understood correctly the message, and he fails to testify that he did not hear what was said about "rushing" the dispatch through. Even had nothing been said by the sender upon that subject, yet, as already stated, the language of the message was sufficient to indicate, to every operator through whose hands it passed, the necessity of its speedy transmission and prompt delivery to the sendees, and that damages might result from any failure or neglect in the performance of the duty assumed by the company.    The plaintiff was not negligent in delivering the message at Ziemer's office, which was a branch office, nor in not having it repeated from Chicago.    The defendant assumed to receive and transmit messages from the office where this one was delivered for transmission, and it was bound to discharge the obligation thus assumed, with reasonable care and diligence, and that, too, notwithstanding the message was not ordered repeated. The verdict was for the actual damages sustained by the plaintiff, resulting from the defendant's omission of duty.

The judgment is

AFFIRMED.

THE other judges concur.