# FERERRO

*v.*

# THE WESTERN UNION TELEGRAPH COMPANY.

---

TELEGRAM; NEGLIGENT ALTERATION IN TRANSMISSION; MEASURE OF DAMAGES.

1. The receiver of a telegram may maintain an action on the case as for a tort committed whenever he shall have sustained actual damages, without his own fault, by reason of the negligent alteration of the message in the course of transmission.
2. Where a message is in cipher, or in language evidently intended to be unintelligible to the telegraph company and its operators, consequential damages are to be excluded from consideration, and the recovery limited to the sum paid for the message.
3. But this rule does not apply where the face of the message clearly shows that a business transaction is contemplated, and that negligence in transmission may reasonably be attended with pecuniary loss.

4. In such case, the court should, with a proper charge, leave it to the jury to find whether, under all the conditions under which the business is carried on and the surrounding circumstances of the case, the defendant either knew, or was put upon inquiry that if prosecuted with reasonable diligence would have caused it to know, the purpose of the message, or to apprehend, as a reasonable consequence of culpable negligence, the occurrence of the particular damage claimed as the natural and direct result of such negligence.

5. A telegram reading "Fifty-five cents, usual terms, quick acceptance," is not within the rule relating to cipher or obscure messages which restricts the recovery of damages to the sum paid for the telegram; but shows upon its face that a business transaction is contemplated, and that negligence in transmission may result in pecuniary loss.

6. Where the word "fifty-five" in such telegram is negligently altered in transmission to "forty-five," the receiver may recover the difference in the price expressed in the telegram when delivered for transmission and that expressed in it when received by him, where he accepts the offer and contracts to resell at an advance on the true price; but he cannot recover the difference between the true price and that at which he contracts to resell the goods when he refuses to accept the goods on discovery of the mistake, such loss being the result of his own misconduct, for which the company is in no way responsible.

7. In such case, the party injured must exercise ordinary care to prevent greater injury and increase of damages.

8. The measure of damages in an action sounding in tort for negligence in the performance of a duty, unattended by circumstances showing evil intent, oppression or wanton disregard of another's right, and which is founded on a contract which raised the duty, though that contract was with another person, is practically the same as if the action were for the breach of the contract under the same circumstances.

9. Loss of business and customers by plaintiff as an indirect result of his failure to perform a contract, the cause of such failure being the negligent alteration of a message in transmission, are too remote and speculative to be taken into consideration as an element of damages recoverable from the telegraph company for such negligent alteration.

No. 605.　Submitted November 2, 1896.　Decided December 1, 1896.

HEARING on appeal by plaintiff from a judgment on demurrer to the declaration in an action on the case for

damages for negligent transmission of a telegram, plaintiff having elected not to amend.  *Reversed.*

The COURT in its opinion stated the case as follows:

This is an action on the case for damages for negligent transmission of a telegram.  The court sustained a demurrer to plaintiff's declaration, and, upon his failure to amend, rendered judgment for defendant, from which this appeal has been duly prosecuted.

The case stated in the declaration is in substance: That plaintiff was a wholesale dealer in produce in the city of Washington, and Loomis & Woodward, of Victor, in the State of New York, were in like business; that Loomis & Woodward, desiring to sell plaintiff a large quantity of potatoes, delivered the following telegram to the defendant, a telegraph company, engaged in the transmission of messages by wire, &c., to be delivered to the plaintiff:

"Victor, N. Y., May 17, 1895.
" To Joseph Fererro, Washington, D. C.
   " Fifty-five cents, usual terms, quick acceptance.
      " (Signed)          Loomis & Woodward."

The customary charge for transmission was prepaid by the senders.  The meaning of the dispatch was that the senders would sell plaintiff potatoes for fifty-five cents per bushel.  It became defendant's duty to correctly transmit said message and deliver the same to plaintiff.  Neglecting this duty through the negligence and improper conduct of its agents charged therewith, defendant delivered the said message to plaintiff with the word forty-five therein written instead of fifty-five as written by the senders.  Believing the message had been correctly transmitted and needing a large quantity of potatoes, plaintiff immediately accepted the offer of Loomis & Woodward and ordered from them two carloads of potatoes, expecting to pay for them at said rate of forty-five cents per bushel.  Relying upon the execution of the order at said  price, plaintiff  immediately

proceeded to sell said potatoes before arrival, and had suc-
ceeded in disposing of one carload, to wit, 525 bushels, to his
customers, who were smaller dealers in said city, for the sum
of seventy-five cents per bushel, the same to be delivered
upon their arrival. Upon the arrival of the potatoes the
bill of lading was accompanied by a bill for fifty-five cents
per bushel. Plaintiff declined to pay said sum but offered
to pay forty-five cents per bushel, which was refused, " and
said potatoes were immediately otherwise disposed of."
Plaintiff made diligent efforts to obtain potatoes elsewhere
with which to supply his customers aforesaid, but without
success, the wholesale price of said potatoes having advanced
in the interim to eighty cents per bushel, " by reason
whereof plaintiff was compelled to disappoint his said cus-
tomers, and in consequence thereof has lost the confidence,
reliance and valuable trade and patronage of divers of
them ; and plaintiff avers that by reason of the premises,
and in consequence of the gross negligence, carelessness, and
improper conduct of said defendant as aforesaid, and not
through any negligence, fault, or want of due case on his
part, he lost the sale of said potatoes and the profits thereon.
Wherefore he claims the sum of $500. Plaintiff also suf-
fered and sustained great damage, inconvenience, trouble,
and worry in and about his said endeavor to obtain other
potatoes to supply his said customers, and has suffered and
sustained great damage to his said business by the loss of
the aforesaid valuable trade and patronage. Wherefore he
claims the sum of $10,000."

*Mr. Andrew B. Duvall* and *Mr. A. Leftwich Sinclair* for the
appellant :

1. In this country one who receives a telegram which,
owing to the negligence of the telegraph company, is altered
or in other respects untrue, is invariably permitted to main-
tain an action against the company for the loss he sustains
through acting upon the message. Telegraph companies

are not bound to undertake telegraphic business; but if they do, are they not bound to know that errors in the transmission of messages may naturally and probably damnify the receivers, in leading them to do what they would otherwise not do? And are they not, as public servants, therefore bound, whether they are forwarding messages under contract or not, to use reasonable care to insure correctness? They may not warrant the authenticity, or the material truth of the dispatch, but certainly they should use diligence and skill and care in that which lies within their power, namely, the transmission and delivery to the addressee of those words or figures which the sender intended him to receive. The right of the addressee to sue for damages which accrue to him, by reason of the negligence of the telegraph company, is well established. 25 Am. & Eng. Encyc. L. 824–826, and cases; Gray, Telegraphs, par. 73, 74; Thompson, Electricity, par. 426–430; 3 Suth. on Damages, 814, 315; Wharton on Neg., par. 758; Bigelow, L. C. Torts, 626; Cooley on Torts, 775.

2. Tort is the proper action in this case. The action is not founded upon any contract, but upon the negligent act of the defendant company in altering the telegram presented to it for transmission to appellant, and thereby entailing upon him loss and damage which clearly would not otherwise have occurred. The telegraph company is engaged in a *quasi* public employment—it enjoys the privilege and benefits of the right of eminent domain, etc., and the great multitude and importance of matters daily transacted over its wires make it necessary that its business should be prosecuted and carried on without negligence. On this point the authorities are in complete accord. The sendee's only remedy is in tort for a breach of the company's public duty. *Tel. Co.* v. *Dryburg,* 35 Pa. St. 298; *Harris* v. *Tel. Co.,* 9 Phila. 88; *Tel. Co.* v. *Richman,* 16 Am. & Eng. Corp. Cases, 263; *Wolfskehl* v. *Tel. Co.,* 46 Hun, (N. Y.) 542; *Elsey* v. *Tel. Co.,* 3 N. Y. Supp. 117; *Tel. Co.* v. *Longwill,* 25 Am. & Eng.

Corp. Cases, 559 ; *Tel. Co.* v. *Fenton,* 52 Ind. 1; *Tel. Co.* v. *Underwood,* 37 Nebraska, 315 ; *McCord* v. *Tel. Co.,* 39 Minn. 181; *Tel. Co.* v. *Dubois,* 128 Ill. 248 ; *Mentzer* v. *Tel. Co.,* 62 N. W. Rep. 1 ; *Abraham* v. *Tel. Co.,* 11 Sawyer (U. S.) 28 ; 6 Wait's Actions and Defences, 12 ; Thompson, Electricity, par. 430 ; Gray, Telegraphs, par. 75.

3. The message when delivered to appellee for transmission to plaintiff was clearly sufficient to suggest its importance to the company. It was legibly written, plain and intelligible. It showed on its face that it related to a business transaction, and was enough to indicate that a pecuniary loss might result from an incorrect transmission. This is all that can be required in the way of notice. Thompson, Electricity, Par. 366 ; 4 Lawson, Rights and Remedies, Par. 1969 ; *Pepper* v. *Tel. Co.,* 87 Tenn. 554; *Tel. Co.* v. *Griswold,* 37 Ohio St. 301 ; *Tyler* v. *Tel. Co.,* 60 Ill. 421 ; *Tel. Co.* v. *Lathrop,* 131 Ill. 575 ; *Bierhaus* v. *Tel. Co.,* 8 Ind. App. 246; *Tel. Co.* v. *Blanchard,* 68 Ga. 299 ; *Tel. Co.* v. *Wenger,* 55 Pa. St. 262 ; *Tel. Co.* v. *Sheffield,* 71 Tex. 570; *Tel. Co.* v. *Adams,* 75 Tex. 531 ; *Martin* v. *Tel. Co.,* 1 Tex. Civ. App. 143; *Tel. Co.* v. *Williford,* 22 S. W. Rep. 244; *Primrose* v. *Tel. Co.,* 154 U. S. 30–32.

4. The damages sought to be recovered in this action are not too remote. According to all the authorities plaintiff is entitled to recover damages for the loss of the profits which the negligence of the defendant prevented him from reaping. Such damages would not be too remote or speculative in an action *ex contractu.* 25 Am. & Eng. Encyc. L. 848–855, and cases; *Tel. Co.* v. *Hall,* 124 U. S. 444.

But in this action—an action *ex delicto*—plaintiff should be allowed to recover all damages which have resulted to him by reason of defendant's negligence in delivering to him a spurious telegram. The rule as to the measure of damages in tort is quite different from that which applies in actions on contract, it being far more comprehensive. 16 Am. &

Eng. Encyc. L. 476; *Railroad Co.* v. *Kemp,* 61 Md. 79, 619; *Ehrgott* v. *Mayor,* 96 N. Y. 264; *Murdock* v. *RR. Co.,* 133 Mass. 15; *Beauchamp* v. *Mining Co.,* 50 Mich. 163; *McNamara* v. *Clintonville,* 62 Wis. 207. And this rule has been held to apply in cases against telegraph companies for negligence in transmitting messages. *Tel. Co.* v. *Richman, supra; Mentzer* v. *Tel. Co., supra;* Gray, Tel., par. 74.

Appellant has a right to recover full compensation for all the injury sustained by the wrongful acts of the company's agents in doing its business, and to be placed in the same situation as he would have been in, if its agents had acted properly and without negligence. *Harriss* v. *Mabry,* 1 Ired. Law (N. C.), 240; *Railroad Co.* v. *Baldwin,* 60 Md. 88. There may be recovery for loss of customers and general damage occasioned thereby. *Roberts* v. *Graham,* 6 Wall. 578.

Appellee by its demurrer has admitted its negligence; and it does not lie in its mouth to say that it did not foresee the injurious consequences, or that the damages are greater than it expected. *Railroad Co.* v. *Baldwin, supra.*

A telegraph company has nothing whatever to do with, and has no right to speculate upon, the extent of the interest of either the sender or sendee of a message, or as to its value or importance, or what damage might result from an erroneous transmission. When it receives a message for transmission and delivery, it has clearly but one duty to perform—to transmit and deliver it correctly; and if it fails to do so it will be liable for all damages, although not of a character such as would be suggested by the telegram as the probable result of a failure to transmit and deliver it without error.

It cannot be said that appellant was guilty of contributory negligence in acting upon this message. He had no reason to suspect that the message was incorrect. It was not his duty to telegraph back to ascertain the correctness of the message. A telegraph company usually delivers a true message—a message which is in all respects what it purports

to be. And in the absence of anything to indicate the contrary, the presumption, in any case, is that the company has delivered a true message; and the presumption is one upon which the receiver is justified in acting. *Tyler* v. *Tel. Co.,* 60 Ill. 433; Gray, Tel., par. 75; *Tobin* v. *Tel. Co.,* 146 Pa. St. 375.

*Mr. J. Hubley Ashton* and *Mr. Leon Tobriner* for the appellee:

1. No wilful injury, intentional wrong, malice, or fraud is charged or imputed in the declaration to the defendant telegraph company.

2. Has the plaintiff, as addressee of the message, a right of action against the defendant in respect to its alleged negligence in the transmission and delivery of the message? It is settled law in England that there is no liability, either in tort or contract (except in cases of agency), on the part of a telegraph company to the person to whom a message is addressed, and this whether the injury complained of is the delivery of an erroneous message or a failure to deliver the message at all—that is, whether it be a case of misfeasance or nonfeasance. *Playford* v. *Telegraph Co.,* L. R. 4 Q. B. 706; *Dickson* v. *Telegraph Co.,* L. R. 2 C. P. Div. 62, 3 C. P. Div. 1 ; *Feaver* v. *Telegraph Co.,* 23 Up. Can. C. P. 150.

Mr. Gray, in his work on the Telegraph, declares that, despite the fact that in most of the States in this country the courts have not adopted the English rule, it is difficult to controvert the principle on which the English decisions rest. Gray, Communication by Telegraph, Sec. 72.

So far as the Federal courts have had occasion to consider the question upon principle, the inclination is to follow the English rule. *Telegraph Co.* v. *Wood,* 13 C. C. A. 432; 57 Fed. Rep. 471. The Circuit Court of Appeals for the Sixth Circuit held that the addressee of the message in that case could not recover for the alleged negligence of the company in respect to the delivery of the message.

The public duty of a telegraph company appears to be the grounds of support for the action by the addressee, most

frequently asserted; but the duty of such companies to the public is defined and much limited by the Supreme Court in the leading case of *Primrose* v. *Telegraph Co.*, 154 U. S. 1. The principles affirmed by the Supreme Court in that case afford no support to the view in respect to the character and relations of telegraph companies, upon which their obligation has been extended by some State courts beyond the sender of the message to the addressee and all the public. It will be seen that one objection of the English courts to allowing an action of tort by the addressee is that such an action would extend the obligation of the company to a guarantee by all mankind against its own negligence, and that there was no warrant for so extending the obligation. This extension is precisely what the principles affirmed in the Primrose case seem to discountenance.

3. If this action is in form in tort, the rule of damages is the same as that applied in an action in form in contract. An action on the case stands for a genus, of which assumpsit is only a species, originating under the statute of Westminster 2d.    1 Chitty Pleading, 136.

The rule of damages in such actions against telegraph companies, whether in contract or in form in tort is definitely settled by the Supreme Court in the *Primrose Case*, following the decision in *Telegraph Co.* v. *Hall*, 124 U. S. 144. The action in the *Primrose Case*, in fact, was an action on the case in form in tort, and not an action of assumpsit on the contract with the telegraph company. The point of the decision of the Supreme Court is that the rule of damages to be applied in an action on the case is the rule of *Hadley* v. *Baxendale*, 9 Exch. 345.

4. The message in this case was an unintelligible message. Most assuredly the matter therein referred to, or the nature, importance, or the extent of the transaction to which the same related or might relate, or the position which the plaintiff would occupy if such message was correctly trans-

mitted, could not be inferred or learned from its language or contents.

In the case of such a message the party entitled to sue in respect to a default of the company in the transmission and delivery of the message can recover nothing more than nominal damages or, at most, the price paid for the transmission, under the rule which limits the damages to those which may be fairly considered as arising, according to the usual course of things, from the breach of the very contract in question or negligence of the defendant, or which both parties must reasonably have understood and contemplated at the time of making the contract as likely to result from its breach or the defendant's negligence. *Telegraph Co.* v. *Primrose,* 154 U. S. 1, 33, 34; Am. & Eng. Encyc. L., Vol. 25, p. 842, and cases cited in note 1, p. 843 ; 6 Wait's Actions and Defences, 19 ; Thompson's Law of Electricity, Sec. 358, and cases cited. There are no damages more than nominal, or at most the price of the message, which can fairly and reasonably be considered as arising naturally, *i. e.,* according to the usual course of things, from the breach of such a contract, or the negligence of the defendant. *Sanders* v. *Stuart,* L. R. 1, C. P. D. 326, 328, cited in 154 U. S., p. 30.

In *Telegraph Co.* v. *Gildersleve,* 29 Md. 232, the telegram was, " Sell fifty (50) gold." Held, that the message was unintelligible. The opinion in that case by Mr. Justice Alvey, is twice cited as authority by Mr. Justice Gray in the *Primrose Case,* 154 U. S. 17, 31. See also *Candee* v. *Telegraph Co.,* 34 Wis. 471 ; *Beaupre* v. *Telegraph Co.,* 21 Minn. 155 ; *Shields* v. *Telegraph Co.,* Allen Tel. Cases, 5 ; *Hart* v. *Cable Co.,* 86 N. Y. 633 ; *Daniel* v. *Telegraph Co.,* 61 Texas, 452 ; *Mackay* v. *Telegraph Co.,* 16 Nevada, 222 ; *Behm* v. *Telegraph Co.,* 8 Bissell, 130.

5. The damages claimed in the declaration could not be recovered even if it could be said that the agents of the company might have supposed from the language of the message that a commercial transaction of some kind, about

something, was intended. The rule of damages in *Hadley* v. *Baxendale* is divided into two branches. The first, that damages may be recovered if they are the direct, natural, and proximate result of the breach of the contract; second, that indirect or special damages may be recovered if they can be reasonably supposed to have been in the contemplation of both parties when making the contract as likely to result from its breach. Both branches of the rule are subject, of course, to this limitation and restriction, that the damages claimed, whether as the direct result of the breach of contract or negligence, or 'as special and consequential damages, must be certain and not remote, speculative, or contingent. *Telegraph Co.* v. *Hall,* 124 U. S. 455.

The rule is stated with great clearness by Mr. Chief Justice Alvey in the Maryland case thus: "A party can only be held responsible for such consequences as may reasonably be supposed to have been in the contemplation of both parties, and no consequence which is not the necessary and ordinary result of a breach can be supposed to have been so contemplated unless full information be imparted to the party sought to be held liable at the time of entering into the engagement." *Telegraph Co.* v. *Gildersleve,* 29 Md. 232.

If the language of this message in fact conveyed information that it related to an intended commercial transaction of some sort, the company, having no other information, could be held liable for no consequence which was not the direct and natural or the necessary and ordinary result of a breach of the contract or the defendant's negligence. The plaintiff could not recover any indirect or special damages. Therefore, even if the damages here claimed were not, as they plainly are, remote, speculative, and contingent, the court, looking at the telegram, would say, in any possible view of it, that the plaintiff could not recover them. It is clear that the message on its face was nothing but a quotation of prices by the senders.

6. The damages alleged and claimed in the declaration are remote, speculative, and contingent, and as such cannot be recovered in this action.

The damages alleged are not any proximate and natural result of the defendant's alleged negligence, but in fact the result of appellant's own conduct. *Telegraph Co.* v. *Hall,* 124 U. S. 144; *Beaupre* v. *Telegraph Co.,* 21 Minn. 155; *Telegraph Co.* v. *Graham,* 1 Colo. 230; *Cahn* v. *Telegraph Co.,* 46 Fed. Rep. 40; Thompson Law of Electricity, Sec. 316–318; *Hubbard* v. *Telegraph Co.,* 33 Wis. 558; *Clay* v. *Telegraph Co.,* 81 Ga. 285; 1st Sedgwick on Damages, Sec. 127; Sutherland on Damages, 18, 19, and 74; *Lane* v. *Telegraph Co.,* 7 Upper Canada Com. Pl. Rep. 23 (1875).

In *Telegraph Co.* v. *Dubois,* 128 Ill. 255, it is held that the damages should be "for an amount which will compensate the plaintiff for his actual loss; they must be in satisfaction of the natural and proximate consequence of the defendant's act." See also *Warwick* v. *Hutchinson,* 45 N. J. L. 61–65.

If the appellant did suffer the loss of patronage and custom and the sale of the potatoes, it was the direct result of his refusal to accept when he had the opportunity of taking them. The damages of which he complains were the result of his refusal to act with reasonable diligence and precaution, and not the result of the erroneous transmission of the message. And where the plaintiff by the exercise of reasonable precaution or diligence could have prevented or reduced the damages, then such damages are excluded from the recovery, as remote. *Telegraph Co.* v. *Way,* 83 Ala. 558; *Baldwin* v. *Telegraph Co.,* 45 N. Y. 744–753; *Marr* v. *Telegraph Co.,* 85 Tenn. 529, 549–'50; Thompson, Law of Electricity, Sec. 410; *Miller* v. *Mariner's Church,* 7 Greenl. 51; 1 Sedg. on Damages, Secs. 124, 201, 202, 205, 895.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. Although an earnest effort has been made to sustain the judgment upon the proposition that the receiver of a

telegraphic message, sent him by one who was not his agent for the purpose, can have no right of action against the carrier of that message for its negligent alteration in the course of transmission, we do not think that could have been the ground upon which the learned trial justice sustained the demurrer.

While it seems to be the prevailing rule in England that the carrier of the message is under no legal obligation to one to whom it has been directed by another, although altered before delivery and acted upon by him to his injury, and that in a case like this the receiver is without remedy, that doctrine has rarely, if ever, met with the approval of the courts of this country.

With apparent unanimity, the courts of our States have upheld the right of the receiver of a telegraphic message to maintain an action on the case, as for a tort committed, whenever he shall have sustained actual damage, without his own fault, by reason of the negligent alteration of the message in the process of its transmission. Gray on Telegraphs, Secs. 71, 73; Bigelow, L. C. Torts, 621 *et seq*; 2 Sedg. Meas. Damages, Sec. 878; 25 Am. & Eng. Encyc. L. 825, See also a few of the numerous cases: *N. Y. Tel. Co.* v. *Dryburg.* 35 Pa. St. 298; *W. U. Tel. Co.* v. *Dubois,* 128 Ill. 248; *May* v. *W. U. Tel. Co.,* 112 Mass. 90; *G. C. & S. F. R. Co.* v. *Levy,* 59 Tex. 563; *W. U. Tel. Co.* v. *Adams,* 75 Tex. 531; *W. U. Tel. Co.* v. *Allen,* 66 Miss. 549; *Young* v. *Tel. Co.,* 107 N. C. 370.

As will be seen on examination of their decisions, the American courts have not all agreed upon a common reason for the rule so generally adopted. The majority, apparently, have rested it upon the idea that the telegraphic agency is engaged in the exercise of a public franchise, having relation to the commerce of and between the States, and in consequence owes to the sender of the message a double duty, one by reason of the contract, the other by virtue of the general obligation to perform the assumed undertaking; and to the person addressed a single duty, by

virtue of the same general obligation. Others take the ground that the person addressed may be the beneficiary of the contract made upon its delivery to the transmitter, and that his right of action does not depend upon whether the sender had been constituted his agent for the purpose, but upon the question, who was to be served in the transaction, and who has been damaged. Others, again, assign for reason that the act of the telegraph company in altering the message is. the misrepresentation of a fact which, if reasonably resulting in injury to the receiver, entitles him to an action for his damages.

There may be difficulty, as has been suggested by writers on the subject, in reconciling the several grounds of the doctrine of the American courts with some general and familiar principles that obtain both in the law of contracts and of torts; but that doctrine unquestionably subserves the ends of justice, thereby furnishing another example, in recent history, of the enlightened spirit of the administration of the common law, wherein is demonstrated both its inclination and capacity to keep pace, in the development of its remedies, with the material progress of the age in the invention and employment of new agencies that work revolutions in pre-existing methods of business. Nor, may we add, have we been able to see any real violation of established principles in a rule of law that meets the necessities of an urgent situation by furnishing a remedy against one who, undertaking, though for another, to deliver a message to a third person, having a right, and who may be reasonably expected to act thereon, so changes the same, by wrongful or negligent act, as to cause that person, when proceeding with the caution of an ordinary business man, to take action in a material matter to his injury and damage.

2. That brings us to the second point of the appellee's contention, namely, that the message was obscure and unintelligible and therefore could not reasonably convey to the defendant. any information of its commercial importance or

pecuniary value. If this point be well taken, and the rule applied thereto that the measure of damages for negligent transmission, in actions either of contract or of tort, must be limited to the loss that must naturally and directly result, under the circumstances as they appeared to the defendant, the only liability would be the cost of transmission, and that, not having been paid 'by or for the account of the plaintiff, he could have no right of action.

Where a message is in cipher, or in language evidently intended to be unintelligible to the telegraph company and its operators, the rule by which we must be guided is, that consequential damages are to be excluded from consideration, and the recovery limited to the sum paid for the message. *Primrose* v. *W. U. Tel. Co.*, 154 U. S. 1, 33. It is true that in the foregoing case, the contract, which was in evidence, contained a stipulation to the effect that the defendant would not be liable " in any case " " for errors in cipher or obscure messages," and this was held to be a reasonable restriction. The decision, however, was not based on that ground alone, as will be seen in the opinion of Mr. Justice Gray, who reviewed the cases generally on the question of the measure of damages, irrespective of contract limitations, in cases where the dispatches were in cipher or otherwise unintelligible.

The rule in respect of cipher dispatches has been applied, too, to others which, as delivered, were "unintelligible jargon " (*Hart* v. *U. S. Cable Co.*, 86 N. Y. 633); or conveyed no possible suggestion of pecuniary value (*Baldwin* v. *U. S. Tel. Co.*, 45 N. Y. 744, 749); or were so obscure as to require explanation in important particulars (*U. S. Tel. Co.* v. *Gildersleve*, 29 Md. 232). In this case, however, the court took occasion to say: "While it was proved that the dispatch in question (sell fifty gold) would be understood among brokers to mean fifty thousand dollars of gold, it was not shown, nor was it put to the jury to find, that the appellant's agents so understood it, or whether they understood it at all."

Conceding the firm establishment of the rule aforesaid, the inquiry remains whether the dispatch in this case comes clearly within its application. Certainly it does not carry the information of its precise meaning and purpose to any one but the person to whom it was directed; but, at the same time, it does convey the idea that a sale of property was in contemplation for delivery and upon prompt acceptance. In the light of all that well-informed people must be presumed to know in respect of the nature, purpose and volume of business that is conducted by means of the telegraph, we cannot say that this dispatch must be regarded as within the said rule, unless, perhaps, in a strictly qualified sense.

It is well known to all persons, as well as the telegraph managers themselves, that innumerable transactions of the greatest importance, relating to bargains, sales and investments of every kind and character known to commerce, are constantly begun and consummated by telegraphic communication between widely separated persons and markets.

It is equally well known also that all reasonable brevity of expression is generally cultivated in telegraphic communications, and that abbreviations and symbols, in accordance with the well known customs of trade, are constantly used without danger of misunderstanding on the part of those familiar with the usages and nomenclature of merchants, brokers and exchanges.

This enormous business has grown up in and rests upon the general belief in the capacity of the telegraph's operators, and the legal duty of its owners, to transmit, with reasonable celerity and accuracy, all messages accepted for that purpose. Failure of these expectations would tend to diminish the volume of the business, and hence prove detrimental to the telegraph companies themselves through the reduction of their receipts.

In view of these considerations, we think that a different rule ought to be established for cases where the face of the message clearly shows that a business transaction is con-

templated, and that negligence in its transmission may reasonably be attended with pecuniary loss.

This doctrine, we think, is consonant with reason and conducive to justice, besides having the support of weighty authority. *U. S. Tel. Co.* v. *Wenger,* 55 Pa. St. 262 ; *Tel. Co.* v. *Griswold,* 37 Ohio St. 301 ; *Blanchard* v. *W. U. Tel. Co.,* 68 Ga. 299, 310 ; *Pepper* v. *Tel. Co.,* 87 Tenn. 554, 558 ; *W. U. Tel. Co.* v. *Sheffield,* 71 Tex. 570 ; *W. U. Tel. Co.* v. *Adams,* 75 Tex. 531 ; *Squire* v. *W. U. Tel. Co.,* 98 Mass. 232 ; *True* v. *Int. Tel. Co.,* 60 Me. 9, 22 ; *Tyler* v. *W. U. Tel. Co.,* 60 Ill. 421 ; *Postal Tel. Co.* v. *Lathrop,* 131 Ill. 575, 586 ; *Bierhaus* v. *W. U. Tel. Co.,* 8 Ind. App. 246, 252 ; *W. U. Tel. Co.* v. *Lowery,* 32 Neb. 734 ; *Rittenhouse* v. *Ind. Line Tel. Co.,* 44 N. Y. 263, 265. In the last case cited, the dispatch as delivered read: " If we have any old Southern sell same before board. Buy five Hudson at board. Quote price." Referring to the contention for exemption from liability founded on its obscurity, Earl, J., said : " If the defendant's agents did not understand the importance and import of the message, they could have enquired of the plaintiff, and hence, for all the purposes of this action, it must be treated as fully understanding the message, and the consequences which would result from its erroneous transmission."

The idea expressed is (and it seems reasonable), that if a message be sufficiently plain to inform defendant that negligence in its transmission and delivery would probably be attended with pecuniary loss, the defendant is thereby put upon inquiry, and if it fails to prosecute the same to the attainment of full and exact information the fault is its own, and it should not be permitted to shield itself behind the excuse of ignorance.

Although this point has never been directly passed upon by the Supreme Court of the United States, we think the views above expressed have indirect support in one of its decisions. *W. U. Tel. Co.* v. *Hall,* 124 U. S. 444. That case came before the court on a certificate of division of opinion

between the judges in the circuit court. The dispatch, which was delayed in delivery, read thus: "Buy ten thousand if you think it safe." The judges found and certified as facts, that "ten thousand" had reference to barrels of petroleum; and the defendant had no information other than that contained in the dispatch; that between the time when the dispatch ought to have been delivered and the time of its actual delivery, oil rose from $1.17 to $1.35 per barrel, and that if it had been delivered the agent to whom it was addressed would have made the purchase at $1.17, though he thought it was safe to buy at $1.35 per barrel. It was further certified that the evidence did not disclose whether the price of oil had advanced or receded since the day of the delivery of the dispatch. Six questions were certified, of which the court answered but one, the fourth. That was, whether the damages should be limited to the recovery of the cost of the dispatch, or should include the difference in value of the oil at the time it would have been purchased had the message been properly and promptly delivered, and the value at the time of actual delivery.

The court held that the difference in value could not be recovered, because it did not appear that if the oil had been bought upon a prompt delivery of the message, it would have been sold at the advanced price of next day. There was no order to sell, and it is not certain that a resale was contemplated, or would have been made on the next day at the advanced rate. There was nothing to show that subsequent to that date he could have sold at a profit. As was said by Mr. Justice Matthews: "No transaction was in fact made, and there being neither a purchase nor a sale, there was no actual difference between the sums paid and the sums received in consequence of it, which could be set down in a profit and loss account. All that can be said to have been lost was the opportunity of buying on November 9, and of making a profit by selling on the 10th, the sale on that day being purely contingent, without anything in the

case to show that it was even probable or intended, much less that it would certainly have taken place." (p. 454.)

The fifth question was, whether the message was so obscure that defendant should not be held to know that it pertained to a transaction involving loss or damage if the message should not be properly and promptly forwarded. This question was not directly responded to, but it would seem to be included in the answer to the preceding one; because the construction of the message was the first necessary step in the case and had its want of intelligibility been considered a bar to the plaintiff's claim of loss, he would have fallen there.

The question of the purport of the dispatch is one for the court, of course, in the first instance. If in cipher, or language conveying no reasonable suggestion of its importance or value, the court would necessarily charge the jury that no more than nominal damages could be recovered, because none other could appear, in a legal sense, to have been within the contemplation of the parties in the event of a breach of the duty of transmission. But if the dispatch, as in this case, shows upon its face that it may relate to a matter of value, and that negligence in its transmission may lead to possible pecuniary loss, the court should then, with a proper charge, leave it to the jury to find whether, under all the conditions under which the business is carried on and the surrounding circumstances of the particular case, the defendant either in fact knew, or was reasonably put upon inquiry that, prosecuted with ordinary diligence would have caused it to know, the particular purpose of the message, or to apprehend, as a reasonable consequence of culpable negligence, the accrual of the particular damage claimed as the natural and direct result of that negligence.

3. The last objection to the declaration is founded on the allegations of damages. These are in two specifications; one for the loss of the purchase at the supposed price, including the profits contracted for in the resale of the potatoes,

and the other for the injury to the plaintiff's business through the loss of valuable trade and patronage consequent upon the loss of his purchase and the failure to supply his customers.

It follows from what has been said herein above in the discussion of the intelligibility of the dispatch, that the plaintiff ought to recover the actual pecuniary damage that he may have sustained through the failure to obtain the potatoes at the price which he had reason to suppose they had been offered to him.

As he had, in apparent good faith, ordered the potatoes for resale to his customers, and had contracted therefor at a certain and advanced price, there was no such element of uncertainty in the matter as barred the recovery in the case of *W. U. Tel. Co.* v. *Hall,* 124 U. S. 144. His loss was of certain ascertainment and apparently the natural and direct result of defendant's negligence in misquoting the price. His case, therefore, to that extent, seems clearly within the rule laid down in the above case and others. *Primrose* v. *W. U. Tel. Co.,* 154 U. S. 1, 29. But there are some other facts alleged in the declaration, the effect of which must reduce the claim of damage under this specification within narrower compass. If plaintiff had accepted the potatoes when tendered, at the true price of the offer made him, namely, 55 cents per bushel, his actual loss would have been 10 cents per bushel, and that must be the limit of his recovery.

He cannot recover the profits that he would have made from the resales that he had contracted for, because that loss was the result of his own conduct. Had he accepted the potatoes, as he had the opportunity to do, he would have realized the profits of the resales, less ten cents per bushel difference in the price of purchase, and for that he would still have had his remedy against the defendant. No excuse is given for his refusal to receive the potatoes other than the flimsy one of his disappointment in the price, and it is difficult to conceive how, under any circumstances,

defendant could have had any responsible agency therein. In such a case it is a just and reasonable rule that demands the exercise of ordinary care by the party injured to prevent greater injury and increase of damages. *True* v. *Int. Tel. Co.*, 60 Me. 9, 23 ; *Daugherty* v. *Am. U. T. Co.*, 75 Ala. 168, 171 ; *W. U. Tel. Co.* v. *Mill*, 57 Tex. 283, 292 ; *Parsons* v. *Sutton*, 66 N. Y. 92, 98 ; *Marr* v. *W. U. Tel. Co.*, 85 Tenn. 529 ; *Scott* v. *B. & N. O. S. S. Co.*, 106 Mass. 469, 471 ; 1 Sedg. Meas. Damages, Sec. 205.

It is contended on plaintiff's behalf that this being an action in tort, a much more liberal rule for the assessment of damages must obtain than if it were an action for the breach of the contract, as was the case in the Hall and Primrose cases, *supra.*

Without undertaking to determine the distinctions that apply in the measure of damages in actions of contract on the one hand, and of tort on the other (for it is not called for in this case), we may say that the line of demarcation, plain enough in some instances, is not always of easy ascertainment. Where the tort consists merely of negligence in the performance of a duty, the rule ordinarily is, " that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Milwaukee etc., R. Co.* v. *Kellogg*, 94 U. S. 469 ; *Scheffer* v. *Railroad Co.*, 105 U. S. 249.

This is, substantially, the oft quoted rule of *Hadley* v. *Baxendale*, in cases of breach of contract that has been so generally adopted by the courts of this country, including the Supreme Court of the United States. *Primrose* v. *W. U. Tel. Co.*, 154 U. S. 29.

Wherever, then, the action sounds in tort for negligence in the performance of a duty, unattended by circumstances showing evil intent, oppression or wanton disregard of

another's rights, and is, as in this case, founded on a contract which raised the duty, though that contract was made with another person, the measure of damages must be regarded as practically the same as if the action were for the breach of the contract under the same circumstances.

Take this case, for example : if the damage had accrued to the senders of the dispatch, instead of to the receiver, it would be unreasonable, as well as most unjust, to say that· their consequential damages must be measured by a stricter rule than applies in the case of the injured receiver, simply because their right of action may be for the breach of the contract while his sounds in tort.

In respect of the second specification of damages, namely, for the loss of business, customers, etc., the court was clearly right in considering all such items as speculative and entirely too remote for consideration.

There may be cases where a breach of contract might be attended with such circumstances of malice and oppression as reasonably to make that contract but an element of the tort or wrong committed, and thus extend the scope of consequential damages in an action appropriate for the purpose. *Rich* v. *N. Y. C. RR.*, 87 N. Y. 382.

There are cases also of contract where, from their nature, a loss of custom is peculiarly within the contemplation of the parties as a probable result of the breach, as for instance, where one has sold a business with a stipulation not to re-engage in the same line within certain limits, and the like. *Helphenstine* v. *Downey*, 7 App. D. C. 343 ; *Railroad Co.* v. *Car Co.*, 5 App. D. C. 524, 543.

And so, too, there may be cases of tort where by the nature of the duty that ought to have been performed, or of the wrong done, a loss of business would be the natural and proximate result. In such cases, and especially where the act is accompanied with circumstances of aggravation, the law will not always scrutinize with strictness the connection between the wrongful act and the injurious conse-

quences in fixing the limit of responsibility. And when necessary, such injuries may be remedied by what are called exemplary damages which punish the wrongdoer, while, at the same time, compensating the injured party on a liberal scale.

It is plain, however, that in ordinary cases like the one at bar, loss of custom, business, credit, etc., involving, as they must do, the intervention and independent action of third persons, must necessarily be regarded as entirely too remote to be taken into consideration. Any other rule would be unreasonable and fruitful of oppression.

But even if this were not the proper rule to apply in this class of cases, plaintiff could have no right to such damages in this case, because of the conclusion, before announced, that he was under an obligation, on his own part, to prevent any increase of the damages if reasonably within his power; for it is clear that if he had accepted the potatoes he could have supplied his customers and prevented any possible injury to his trade.

For the reasons given, the judgment must be reversed, with costs, and the cause remanded for further proceedings; and it is so ordered. *Reversed and remanded.*